UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

Eddie M. Diaz,

                        Plaintiff,          CV-03-6466 (CPS)

    - against -                             MEMORANDUM OPINION
                                            AND ORDER
Paragon Motors of Woodside, Inc. and
Americredit Financial Services, Inc.

                        Defendants.

------------------------------------X

SIFTON, Senior Judge.

    Eddie Diaz brings this action against Paragon Motors of

Woodside, Inc. ("Paragon") and Americredit Financial Services,

Inc. ("Americredit") alleging that defendant Paragon Motors

violated (1) the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et

seq.*,[1] (2) the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §

1691,[2] (3) New York's Vehicle & Traffic Law § 417-a[3] (4) New

---

[1] Pursuant to 15 U.S.C. § 1640, an individual bringing a TILA claim may
recover: 1) actual damages; 2) twice the amount of any finance charge in
connection with the transaction, not less than $100 nor greater than $1,000;
3) costs of the action, together with a reasonable attorney's fee as
determined by the court.

[2] An individual bringing suit under ECOA may be entitled to actual damages,
punitive damages up to $10,000, equitable and declaratory relief, as well as
costs and attorney's fees. 15 U.S.C. § 1691e.

[3] N.Y. Vehicle and Traffic Law § 417-a provides that
    Upon sale or transfer of title by a dealer of any second-hand passenger
    motor vehicle, the dealer shall execute and deliver to the buyer an
    instrument in writing in a form prescribed by the commissioner which
    shall set forth the nature of the principal prior use of such vehicle
    when the dealer knows or has reason to know that such use was as a
    taxicab, rental vehicle, police vehicle. . .

The Regulations of the Commissioner provide that
    This statement shall be conspicuously printed, typed or stamped on the

York's "Used Car Lemon Law," New York General Business Law § 198-
b,[4] (5) the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2310,[5]
by breaching (a) express warranties (b) implied warranties and
(c) revocation of acceptance, and (6) New York General Business
Law § 349 by its deceptive sales practices.[6]  In addition,
plaintiff alleges that (7) co-defendant Americredit is liable for
damages on all claims which plaintiff asserts against co-
defendant Paragon, pursuant to 16 C.F.R. § 433.2 (the "Holder
Rule"), as a provider of consumer credit.

On March 29, 2006, I issued a Memorandum Opinion and Order

---

dealer's contract of sale, and the appropriate line checked, and given
to the purchaser before the purchaser signs it. . . [f]ailure to check a
line shall mean that the dealer does not know or has no reason to
believe that the principal prior use of the vehicle was as a police
vehicle, taxicab, rental vehicle or driver education vehicle.  If a
dealer uses an oral contract for the purchase of a secondhand passenger
motor vehicle, he shall deliver to the purchaser a written statement
concerning the prior use of the motor vehicle before accepting payment
of a deposit from the purchaser.
15 NYCRR 78.13(g)(1)."

[4] If a dealer fails to honor the warranty as provided in NY GBL § 198-b, "the
dealer shall accept return of the used motor vehicle from the consumer and
refund to the consumer the full purchase price."  N.Y. General Business Law §
198-b(c)(1).

[5] Consumers may recover "a sum equal to the aggregate amount of cost and
expenses (including attorneys' fees) . . . unless the court in its discretion
shall determine that such an award of attorneys' fees would be inappropriate."
15 U.S.C. § 2310(d).

[6] "In addition to the right of action granted to the attorney general pursuant
to this section, any person who has been injured by reason of any violation of
this section may bring an action in his own name to enjoin such unlawful act
or practice, an action to recover his actual damages or fifty dollars,
whichever is greater, or both such actions. The court may, in its discretion,
increase the award of damages to an amount not to exceed three times the
actual damages up to one thousand dollars, if the court finds the defendant
willfully or knowingly violated this section. The court may award reasonable
attorney's fees to a prevailing plaintiff."  McKinney's General Business Law §
349(h).

with respect to plaintiff's motion for partial summary judgement on liability with respect to the TILA, ECOA and N.Y. Veh. & Traf. Law § 417-a claims and defendants' cross motions for summary judgment on all claims.  The March decision granted plaintiff summary judgment on all aspects of TILA and N.Y. Veh. & Traf. Law § 417-a, and therefore on N.Y. Gen. Bus. Law §349 to the extent that such claim was premised on violations of TILA and N.Y. Veh. & Traf. Law § 417-a.  I granted defendants' summary judgment on all other claims with the exception of the MMWA as to breach of the implied warranty claim and the revocation of acceptance claim.  In June, the parties filed a joint stipulation voluntarily discontinuing the MMWA claim.

What remained for trial was whether (1) the plaintiff suffered any injury, and if so, the extent of his damages, as a result of defendants' violations of TILA and N.Y. Veh. & Traf. Law § 417-a; and (2) whether damages under TILA and N.Y. Veh. & Traf. Law § 417-a established injury with respect to N.Y. Gen. Bus. Law §349.

For the reasons set forth below, I conclude that defendants violated New York General Business Law § 349.  Plaintiff is awarded $1000 in damages against Paragon Motors for violations of TILA, and $7,890 in damages against both Paragon Motors and Americredit for violations of N.Y. Veh. & Traf. Law § 17-a.

What follows sets forth the findings of fact and conclusions

of law on which these determinations are based as required in Rule 58 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 58(a)(1).

## BACKGROUND

On May 9, 2003, plaintiff Eddie Diaz visited Paragon's used car dealership at 57-02 Northern Boulevard, Woodside, New York in Queens County.  Diaz told Paragon's salesman that he was interested in purchasing a used 2002 Chrysler Town and Country advertised in the New York *Daily News* on May 8, 2003 for sale at a purchase price of $13,495.00.[7]  Plaintiff made a deposit of $500.00 towards the purchase of the car in order to assure its availability.  He also signed a document noting "$4,000 Cash Down" in the space provided for price, under which was written, "Subject to Bank Approval", but with no total vehicle price or other fees listed.  (Joint Trial Ex. 2.)  The document, variously described as an "initial intent to buy", "customer's intention to buy" or "a buyer's order" by Paragon, (Benstock Dep., 26, 32-33, 43), included a description of the vehicle, its stock and VIN numbers, mileage of 30,540, and a notation of the $500 deposit. A form intended to disclose by checked boxes prior use of the

---

[7] The advertisement included the following disclaimer, "Price/Payments exclude tax & MV fees. Price/Payments based on approval by primary lender. Late or derogatory credit may affect monthly payments, down payment, financing rate and amount financed.  Credit approval based on prime lending source, bankruptcies must be discharged.  Must show proof of employment.  5 Day Exchange for an in stock vehicle only. Offers can not be combined."  (Joint Ex. 1.)

vehicle as a police vehicle, taxi-cab, driver education or rental
vehicle as required by Vehicle and Traffic Law § 417-a, was left
blank. (Joint Trial Ex. 2; Benstock Dep., 36.)

At the time, Paragon agreed to assist Diaz in financing the
car.[8] Paragon thereafter submitted Diaz's loan application via
an electronic data system called Dealer Track to determine
whether Diaz was eligible for financing by a sub-prime lender,
and at what amount.[9]

On the same day, May 9, Consumer Portfolio Services, Inc.
(hereinafter "CPS"), a sub-prime lender, pre-approved a loan to
Diaz subject to certain conditions, including income and
employment verification and payment by Paragon of an acquisition
fee of $199 later charged to Diaz.  The pre-approval provided for
a maximum payment per month of $350, at an annual interest rate
of 19.95%.  (Joint Ex. 5 for Motions for Summary Judgment on

---

[8] The document provides in this connection, "[i]f you [Paragon] agree to
assist me [Diaz] in obtaining financing for any part of the purchase price,
this order shall not be binding upon you or me until all of the credit terms
are presented to me in accordance with Regulation "Z" (Truth-in-Lending) and
are accepted by me.  If I do not accept the credit terms when presented, I may
cancel this order and my deposit will be refunded."  (Joint Ex. 2.)

[9] According to the deposition testimony of a regional manager for defendant
Americredit, a call for bids is sent electronically by the dealer to banks via
a website called Dealer Track.  This allows banks selected by the dealer to
bid on the loan application. (Rivera Dep., 37.)  The salesperson and finance
manager who handled Diaz's transaction have not been deposed, but according to
Brian Benstock, General Manager of Paragon, it was Paragon's practice at the
time to decide whether to submit a customer's application to a primary lender
based on a credit report.  In Diaz's case, Benstock could not recall whether
the application was submitted to primary lenders, but he concluded that it
would only have been submitted to sub-prime lenders because of his inferior
credit score, a 2001 bankruptcy, and a "$17,179 charge-off to Chase Manhattan
Bank . . . that would immediately disqualify him for approval." (Benstock
Dep., 146-147.)  As a result, Paragon submitted Diaz's application to Dealer
Track, which allowed sub-prime lenders to bid on the loan.

9/22/05.)  Based on these terms, Paragon set a selling price of

$16,130.13, with CPS to provide financing.  Additional charges

included $1,500 for an extended warranty,[10] $1,454.49 in taxes

and $140 in license, title, state inspection and processing fees.

The total selling price listed on the proposed bill of sale,

dated May 10, 2003, was $19,224.62.  The down payment was fixed

at $6,000, so the total remaining due would be $13,224.62.

(Joint Ex. 11 for Motions for Summary Judgment on 9/22/05,

Proposed Bill of Sale.)  Because Diaz would ultimately send

$21,000 in payments to CPS, the total amount financed was

$7,775.38 ($21,000 less $13,224.62), according to a proposed

Retail Installment Contract, also dated May 10, 2003.  (Joint Ex.

10 for Motions for Summary Judgment on 9/22/05, Proposed Retail

Installment Contract.)  CPS turned down the loan for unexplained

reasons, and it was eventually picked up by Americredit.

On the following day, May 10, 2003, Diaz again offered to

purchase the car for the advertised price of $13,495, gave an

additional deposit of $1,000.00, and again asked Paragon to

obtain financing.  According to Diaz, there were no further

negotiations with respect to the purchase price of the vehicle on

May 10.  (Diaz Dep. 26.)  The next day, May 11, Paragon informed

Diaz that in order to obtain financing, he would have to put

---

[10] The extended warranty, or vehicle service contract, subsequently purchased
by the plaintiff for $1,800, was provided by a non-party to the dispute, Honda
Care, and covered repairs for 4 years or 60,000 miles.  The limited warranty,
provided by Paragon as required by New York's Used Car Lemon Law, covered
repairs for 90 days or 4,000 miles.

$6,000 down, instead of $4,000 as previously provided for in the
May 9 agreement.

Diaz stated that on May 12, 2003, he returned to Paragon to
pay the additional $4,500 requested for the down payment, but did
not execute any documents until the following day.[11]  According
to Diaz, on May 13, 2003 he returned to Paragon and executed a
Retail Installment Contract ("RISC"), dated May 12, 2003, which
disclosed the final details of the sale, and reflected an
increase in the purchase price of the vehicle.  According to
Diaz, the Paragon finance manager told him that the original
advertised price of $13,495 was not available because a primary
lender would not finance the car, because a secondary lender had
to be used, and because the extended warranty was necessary to
obtain financing.  (Diaz Dep., 34-37.)  Because he was putting
down $6,000, the balance of $14,047.18 was to be financed by
Americredit Financial with 60 monthly payments at $367.87 per
month, equaling $22,072.20.  The total finance charge listed in
the RISC was $8,025.02.  The "total sale price" for the vehicle
including $16,590 purchase price, $1,517.18 sales tax, $8,025.02
finance charge, $1,800 extended warranty, and other license,
title, state inspection and processing fees was stated as
$28,072.20.  (Joint Trial Ex. 3, Retail Installment Contract.)

---

[11] In his deposition, Diaz stated that he was unable to execute any documents
that day because "the financial guy was not available".  (Diaz Dep., 28-34.)
In the Complaint and later in his deposition, Diaz stated that did not sign
any of the documents until May 13, because of a defect with the vehicle.
(Complaint, ¶¶ 13, 14; Diaz Dep. 54-55.)

On a bill of sale dated May 12, 2003, but not signed until May 13 according to Diaz, the purchase price was listed as $16,590 plus $1,800 described as "Other Equipment" apparently representing the new price for the extended warranty, $1,517.18 sales tax, and $140.00 for license, title, state inspection and processing fees, for a total cash price of $20,047.18.[12] (Joint Trial Ex. 6, Bill of Sale.) The bill of sale included a statement, signed by Diaz, that the "principal pride [sic: prior?] use of th[e] vehicle was as a rental vehicle." (Joint Trial Ex. 6.) Diaz stated the bill of sale was the last document he signed before taking possession of the vehicle. (Diaz Dep., 32-33.)

*The Limited Warranty*

The sale included a limited warranty which covered repairs to covered parts, for 90 days or 4,000 miles. The warranty provided that the dealer would repair "covered parts listed on the reverse side" of the warranty or would reimburse the buyer for such repairs.[13] The warranty is dated May 10, 2003, but is not signed by either party.

---

[12] The difference in price between the RISC and the bill of sale appears due to the inclusion of finance charges in the RISC.

[13] The warranty provides that, "[t]he Dealer participates in an informal dispute settlement procedure to arbitrate any dispute which may arise under Section 198-b of the New York General Business Law . . . relating to this warranty. . . The buyer must resort to this settlement procedure or such alternate New York State arbitration procedure under the Act before pursuing any other rights or remedies available under the Act. The buyer need not resort to the settlement procedure if he/she seeks to pursue rights and remedies not created by the Used Car Lemon Law." (Def.'s Mem. Opp'n, Ex. 25.)

*The Vehicle Repairs*

A few days after Diaz took possession of the vehicle on May 13, 2003, he complained that the brakes were not responding, the front wheels made a strange sound upon turning, and that there were problems with the air conditioning and mirrors. (Diaz Dep., 56-59.) On May 20, he brought the vehicle back to Paragon for repairs to the mirror, ABS[14] light and air conditioning, which were completed at no charge on May 23. (Def.'s Mem. Opp'n to Summary Judgment, Ex. 17.)

Diaz brought the car back to Paragon again on May 30 for repairs to the ABS and brake lights, and "the links and bushings." According to Diaz, the vehicle was sent to a Chrysler dealership, and returned about one month later, during which time Diaz rented another vehicle. Diaz did not pay for the repairs or rental vehicle, but stated that he paid $278 for additional insurance for the rental vehicle, which he does not seek to have reimbursed. (Diaz Dep., 70.) The invoice from Bayside Chrysler, Plymouth, Jeep, Inc. describes repairs to the front suspension and ABS light, where "[c]ustomer states noise in front end over bumps" and "that the anti lock brake light is on and brake light on". (*Id*. at Ex. 18.) It is unclear from the invoice when the car was received and when it was returned to Diaz, although it lists the "R.O. Date" as 06/06/03, and an invoice date of

---

[14] Anti-Lock Brake System

06/27/03. (Def.'s Mem. Opp'n to Summary Judgment, Ex. 19.) Diaz
stated that after the car was returned to him the problem with
the brake light reoccurred, and on July 10, he returned the
vehicle to Bayside Chrysler for further repairs, which were
completed that day or the day after at no charge to him. Diaz
stated that the vehicle worked properly after these repairs.

After the 90-day warranty had expired, Diaz brought the car
to Tony's Auto Body on October 9, 2003, for repairs following an
accident in September 2003 (Def's Mem. Opp'n to Summary Judgment,
Ex. 21; Diaz Dep., 89-93.) On May 18, 2004, Jochi Auto Repair,
Inc. performed work to the "Rear Anti Locks Sensor Installed Left
and Right" and "Replace Front [illegible]". On July 20, 2004,
Riverdale Chrysler Jeep performed additional repairs to the
"check engine light". These repairs were either covered by
insurance or Diaz's extended warranty. (Def.'s Mem. Opp'n to
Summary Judgment, Ex. 22-23; Diaz Dep., 77-86.)

Plaintiff stated that several times he used the Chrysler for
business instead of his other car, because he was concerned that
the Chrysler was unsafe.[15] (Diaz Dep., 88.) Diaz stated that he
informed Paragon that he wanted them to take the vehicle back
when he brought it in to be repaired for the second time in May
or June of 2003. Paragon's agent did not accept the vehicle, but

_____

[15] Plaintiff usually drove the other car for business leaving his wife to
drive the Chrysler. However, because plaintiff was worried about the
Chrysler's safety he drove it and left the other car for his wife.

-11-

repaired it instead.  (Diaz Dep., 88.)

**DISCUSSION**

*Jurisdiction*

This Court has jurisdiction over plaintiff's TILA claims pursuant to 28 U.S.C. §§ 1331 and 1337.  This Court exercises supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

*TILA*

Under 15 U.S.C. §1640, the plaintiff can recover twice the amount of any finance charge in connection with the transaction, not less than $100 nor greater than $1,000 for prevailing in a TILA action in addition to the costs of the action and reasonable attorney fees as determined by the court.  In the present case defendant paid $16,590 instead of the advertised $13,495 for the car.  Thus, he paid a finance charge of $3,095.  (Memorandum Opinion and Order, March 29, 2006, page 22.)  Accordingly, plaintiff has recovered the maximum amount under TILA on his "advertised price increase claim" and cannot recover based on his bank fee and warranty claims.  (Memorandum Opinion and Order, March 29, 2006, page 23.)  I award Diaz $1000 against defendant Paragon Motors[16] for prevailing on this cause of action, as stated in my March 29, 2006 Memorandum Opinion and Order.

*N.Y. Veh. & Traf. Law § 17-a*

---

[16] In my March 29, 2006 Memorandum Opinion and Order pages 54-56, I granted defendant Americredit summary judgment with respect to TILA.

New York Vehicle and Traffic Law § 417-a awards a prevailing plaintiff three times the actual damages suffered, or $100, whichever is greater.  The court may also award reasonable attorney fees[17].  Defendants contend that because plaintiff was informed of the vehicle's use as a rental car prior to purchasing the vehicle, there were no actual damages.  But, as I stated in my March 29, 2006 Memorandum Opinion and Order, pages 34-37, defendant Paragon Motors violated the statute by not properly informing the plaintiff of the vehicle's history as a rental car. This occurred when defendant Paragon Motors did not check off the appropriate box to notify the plaintiff of the vehicle's prior rental history on Joint Trial Exhibit 2.  Thus, that document contained false or misleading information, a clear violation of N.Y. Veh. & Traf. Law § 17-a.[18]

As noted earlier, New York Vehicle and Traffic Law § 417-a intends for a seller of a vehicle with a prior rental history to inform a buyer of such a vehicle at a certain point in the sale transaction.  Specifically, that the buyer has to be notified of the prior rental history of the vehicle on the contract of sale

---

[17] "A consumer injured by a violation of this section may bring an action to recover damages.  Judgment may be entered for three times the actual damages suffered by a consumer or one hundred dollars, whichever is greater.  A court may also award reasonable attorneys' fees to a prevailing plaintiff buyer." NY V&T § 17-a (4)

[18]  N.Y. Vehicle and Traffic Law § 417-a (b)(3) states that "[t]he failure of a dealer to deliver to the buyer the instrument required by this section or the delivery of an instrument containing false or misleading information shall constitute a violation of this section."

before it is signed, by checking off the appropriate box.[19]
Thus, implicit in this statute is a requirement of *timely*
disclosure, and disclosure at any later point frustrates the
purpose of the timeliness requirement. The statute punishes
sellers who fail to timely disclose prior history which affects
the value of a vehicle with a damage award. *See Klein v Pincus*,
397 F.Supp 847 (E.D.N.Y. 1975) (quoting Delay *v. Hearn Ford*, 373
F.Supp. 791, 795 (D.S.C. 1974)) (where the Court found that the
failure to disclose the actual odometer reading under 15 U.S.C.A.
§ 1988 frustrated the purpose of the statute whose intent was to
punish sellers who failed to disclose history which affects the
value of the vehicle; and actual damages were awarded as a
result). Here, Diaz purchased a less valuable vehicle at an
increased price because of the untimely disclosure of the
vehicle's rental history.

Defendants argue that there are no actual damages in this
case because Diaz "has never attempted to sell, trade-in or
appraise the vehicle." (Def. Post Trial Brief of October 18,
2006, page 3.) Actual damages are "an amount awarded to a
complaintant to compensate for a proven injury or loss; damages
that repay actual loss." Brian A. Garner, *Black's Law
Dictionary*, 416 (8th ed., West Publishing Co. 2004). Here, Diaz
was damaged when he paid more for the vehicle than he should

---

[19] N.Y. Veh. & Traf. Law § 417-a (b)(3), 15 NYCRR 78.13(g)(1).

have, given the vehicle's prior history as a rental car.

Plaintiff noted that vehicles previously used for rental purposes suffer a 20-25% decrease in market value compared to similar vehicles without such a history. Plaintiff's expert, David Stivers, presented evidence at trial that rental cars suffer at least a 20% decrease in market value compared to similar vehicles without such a history. (Trial Transcript, 24.) I find that Diaz suffered a loss of $2,630 (this is the price Diaz paid, $16,590, minus the retail value at the time Diaz purchased the vehicle which was $13,960[20]). (Trial Transcript, 27-28.) I award Diaz $7,890, which is three times the damage figure of $2,630, in damages against both Paragon and Americredit as allowed by the statute.

*New York General Business Law § 349*

New York General Business Law Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §349(a). To establish a claim under §349, a consumer must demonstrate: (1) the defendant's act was misleading in a material way; (2) the act was directed at consumers; and (3) the plaintiff has been injured as a result. *Maurizio v. Goldsmith,* 230 F.3d 519, 521 (2d Cir. 2000).

---

[20] Plaintiff's expert testified that the Blue Book Value of the vehicle at the time of purchase was $17,450. That figure is then devalued by 20% due to the vehicle's rental history for a retail value of $13,960.

In the Memorandum Opinion and Order of March 29, 2006, page 52, I stated that "where as here, the dealer has violated the underlying federal laws of TILA and N.Y. Veh. & Traf. Law § 417-a, a reasonable jury could find that the dealer engaged in a materially misleading act." I further determined that Diaz demonstrated that the practice was consumer oriented because the transaction involved documents that are routinely presented to similar customers. *See, e.g., Teller v Bill Hayes, Ltd.*, 213 A.D.2d 141, 147-148 (N.Y. App.Div. 2d Dept 1995). The credit terms of the financing were misleading and the prior rental vehicle history box was not checked on the contract of sale. (Memorandum Opinion and Order, March 29, 2006, pages 17-23, 33-37.) In addition, I determined at that time that Diaz "paid at least $3,000 more for the vehicle than he would have had it not been for the defendant's deceptive sales practices, thus having made a threshold showing that he was injured by reason of defendant's deceptive sales practice." (Memorandum Opinion and Order, March 29, 2006, page 53.)

As explained in my award of damages above, I find that Diaz was injured as a result of defendants' deceptive acts at the time the TILA and N.Y. Veh. & Traf. Law § 417-a violations occurred. Plaintiff showed that defendants' acts met all three elements needed for violating N.Y. Gen. Bus. Law § 349. Thus, defendants are liable for violations of N.Y. Gen. Bus. Law § 349.

Defendants urge the court to dismiss the N.Y. Gen. Bus. Law

§ 349 claims on the grounds that if defendants are found to violate N.Y. Gen. Bus. Law § 349, plaintiff cannot recover damages. Defendants argue that plaintiff cannot seek duplicative compensatory damage recovery under N.Y. Gen. Bus. Law § 349 premised on the same facts that are being used to recover damages under TILA and N.Y. Veh. & Traf. Law § 417-a. I agree. Compensatory damages can only be awarded one time for an injury. If two causes of action provide a theory for compensating one injury, only one recovery may be obtained. *Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir. 1991); *Wickham Contracting Co. v. Board of Education*, 715 F.2d 21, 28 (2d Cir. 1983). "Only if the second cause of action entitles the plaintiff to recover for an injury separate from the injury compensated by the award for the first cause of action, or at least for an additional component of injury not covered by the first cause of action, may additional damages be awarded." *Bender v. City of New York*, 78 F.3d 787 (2d Cir. 1996). Therefore, because I already awarded Diaz actual damages for these same injuries under TILA and N.Y. Veh. & Traf. Law § 417-a, as discussed above, he cannot also recover actual damages under N.Y. Gen. Bus. Law § 349.

## CONCLUSION

For the reasons set forth above, plaintiff Diaz is awarded $1000 in damages against Paragon Motors under his TILA claim, and $7,890 in damages against both Paragon Motors and Americredit

under his N.Y. Veh. & Traf. Law § 17-a claim.  Defendants both violated N.Y. Gen. Bus. Law § 349, but for the aforementioned reasons, no damages are awarded to Diaz for prevailing on this claim.  Plaintiff may make an application for attorney's fees supported by contemporaneous time records within 14 days of the date of this decision.  Fed. R. Civ. P. 54 (d)(2).

The Clerk is directed to furnish a filed copy of the within to all parties and to the Magistrate Judge.

SO ORDERED.

Dated:      Brooklyn, New York
            January 29, 2007


By: /s/ Charles P. Sifton (electronically signed)
            United States District Judge