UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Eddie M. Diaz,

                        Plaintiff,          CV-03-6466(CPS)(RML)

    - against -                             MEMORANDUM OPINION
                                            AND ORDER
Paragon Motors of Woodside, Inc. and
Americredit Financial Services, Inc.

                        Defendants.

-------------------------------------X

SIFTON, Senior Judge.

    Eddie Diaz brings this action against Paragon Motors of

Woodside, Inc. ("Paragon") and Americredit Financial Services,

Inc. ("Americredit") to recover attorneys' fees and disbursements

in the amount of $86,569.52, pursuant to Rule 54(d) of the

Federal Rules of Civil Procedure[1].

    This motion for fees stems from an action Diaz commenced

against Paragon Motors alleging that defendant Paragon Motors

violated (1) the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et

seq.*,[2] (2) the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §

_____

[1] Rule 54(d) allows a prevailing party costs, other than attorneys' fees
"unless the court otherwise directs." Fed.R.Civ.P. 54(d)(1). A court may
also award attorneys' fees and related non-taxable expenses on application by
a party. Fed.R.Civ.P. 54(d)(2)(A).

[2] Pursuant to 15 U.S.C. § 1640, an individual bringing a TILA claim may
recover: 1) actual damages; 2) twice the amount of any finance charge in
connection with the transaction, not less than $100 nor greater than $1,000;
3) costs of the action, together with a reasonable attorney's fee as
determined by the court.

1691,[3] (3) New York's Vehicle & Traffic Law § 417-a[4] (4) New

York's "Used Car Lemon Law," New York General Business Law § 198-

b,[5] (5) the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2310,[6]

by breaching (a) express warranties (b) implied warranties and

(c) revocation of acceptance, and (6) New York General Business

Law § 349 by its deceptive sales practices.[7]  In addition,

plaintiff alleged that (7) co-defendant Americredit should be

held liable for damages on claims which plaintiff asserts against

co-defendant Paragon, pursuant to 16 C.F.R. § 433.2 (the "Holder

Rule"), as a provider of consumer credit.

On March 29, 2006, I issued a Memorandum Opinion and Order

---

[3] An individual bringing suit under ECOA may be entitled to actual damages, punitive damages up to $10,000, equitable and declaratory relief, as well as costs and attorney's fees. 15 U.S.C. § 1691e.

[4] "A consumer injured by a violation of this section may bring an action to recover damages.  Judgment may be entered for three times the actual damages suffered by a consumer or one hundred dollars, whichever is greater.  A court may also award reasonable attorneys' fees to a prevailing plaintiff buyer." NY V&T § 417-a (4).

[5] If a dealer fails to honor the warranty as provided in NY GBL § 198-b, "the dealer shall accept return of the used motor vehicle from the consumer and refund to the consumer the full purchase price."  N.Y. General Business Law § 198-b(c)(1).

[6] Consumers may recover "a sum equal to the aggregate amount of cost and expenses (including attorneys' fees) . . . unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate." 15 U.S.C. § 2310(d).

[7] "In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."  McKinney's General Business Law § 349(h).

with respect to plaintiff's motion for partial summary judgement

on liability with respect to the TILA, ECOA and N.Y. Veh. & Traf.

Law § 417-a claims and defendants' cross motions for summary

judgment on all claims.  The March decision granted plaintiff

summary judgment on liability with respect to its claims under

TILA and N.Y. Veh. & Traf. Law § 417-a, and on N.Y. Gen. Bus. Law

§ 349 to the extent that such claim was premised on violations of

TILA and N.Y. Veh. & Traf. Law § 417-a.[8]  I granted defendants'

summary judgment on all other claims with the exception of the

MMWA breach of implied warranty claim and the MMWA revocation of

acceptance claim.  In June, the parties filed a joint stipulation

voluntarily discontinuing the MMWA claim.

　　I held a bench trial on October 11, 2006 to determine

whether the plaintiff was entitled to damages as a result of

defendants' violations of TILA and N.Y. Veh. & Traf. Law § 417-a

and N.Y. Gen. Bus. Law §349.  In my January 29, 2007 Memorandum

Opinion and Order following the trial, I awarded plaintiff $1000

in damages against Paragon Motors for violations of TILA, and

$7,890 in damages against both Paragon Motors and Americredit for

violations of N.Y. Veh. & Traf. Law § 417-a.  I also concluded

that defendants violated New York General Business Law § 349, but

---

[8]  Because TILA provides for more limited assignee liability than the Holder
Rule, 16 C.F.R. § 433.2, I granted Americredit's motion for summary judgment
on plaintiff's TILA claim.  *Diaz v. Paragon Motors of Woodside, Inc.,* 424
F.Supp.2d 519, 544 (E.D.N.Y. 2006).

I did not award Diaz any damages for prevailing on this claim because the damages were duplicative of the damages recovered under TILA and N.Y. Veh. & Traf. Law § 417-a. Plaintiff thereafter applied for attorney's fees and disbursements.

For the reasons set forth below, I conclude that plaintiff is entitled to attorneys fees and disbursements in the total amount of $67,353.52.

What follows sets forth the findings of fact and conclusions of law on which these determinations are based as required by Rule 58 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 58(a)(1).

## BACKGROUND

Familiarity with this Court's earlier decisions, findings and conclusions is assumed.[9]

## DISCUSSION

*Amount of Fees and Disbursements Requested*

Plaintiff requests an award of $72,665.50 in fees and $13,914.02 in disbursements pursuant to Rule 54(d) of the Federal Rules of Civil Procedure for attorneys fees and disbursements. Defendants argue that the amount of fees requested is unwarranted because of plaintiff's limited success. In addition, defendants object to the billing of clerical work at attorney and paralegal

---

[9] *Diaz,* 424 F.Supp.2d 519, and *Diaz v. Paragon Motors of Woodside, Inc.*, No. CV-03-6466, 2007 WL 295602 (E.D.N.Y. Jan. 29, 2007).

rates, the billing of the expert witness fee above the $40.00
daily witness fee provided by 28 U.S.C.A. §1821 and §1920, the
inclusion of Federal Express fees and the inclusion of pre-
litigation fees.  Defendants also object to calculating attorney
fees using hourly rates for attorneys practicing in the Southern
District of New York (as requested by plaintiff's counsel) rather
than using Eastern District rates.

*TILA*

Under 15 U.S.C. §1640, a prevailing plaintiff can recover
reasonable costs and attorney fees[10] as determined by the court.
I awarded Diaz $1000 in damages against defendant Paragon
Motors[11] for prevailing on this cause of action, as stated in my
March 29, 2006 Memorandum Opinion and Order.

*N.Y. Veh. & Traf. Law § 417-a*

New York Vehicle and Traffic Law § 417-a also allows the
court to award a prevailing plaintiff reasonable attorney fees[12].
In my January 29, 2007 Memorandum Opinion and Order, I found that
Diaz suffered a loss of $2,630 (the price Diaz paid, $16,590,
minus the retail value at the time Diaz purchased the vehicle

---

[10]  15 U.S.C.§1640 (a)(3) provides that "in the case of any successful action
to enforce the foregoing liability or in any action in which a person is
determined to have a right of rescission under section 1635 of this title, the
costs of the action, together with a reasonable attorney's fee as determined
by the court."

[11] In my March 29, 2006 Memorandum Opinion and Order pages 54-56, I granted
defendant Americredit summary judgment with respect to TILA.

[12]  N.Y. Veh. & Traf. Law § 417-a(4).

which was $13,960[13]).  (Trial Transcript, 27-28.)   Accordingly,

I awarded Diaz $7,890, which is three times the damage figure of

$2,630, in damages against both Paragon and Americredit.

*New York General Business Law § 349*

In my January 29, 2007 Memorandum Opinion and Order, I found

that Diaz was injured as a result of defendants' deceptive acts

at the time the TILA and N.Y. Veh. & Traf. Law § 417-a violations

occurred.  Plaintiff showed that defendants' acts met all three

elements needed for violating N.Y. Gen. Bus. Law § 349.  Thus,

defendants were liable for violations of N.Y. Gen. Bus. Law §

349.  However, I denied awarding additional damages under N.Y.

Gen. Bus. Law § 349 because I already awarded Diaz actual damages

for these same injuries under TILA and N.Y. Veh. & Traf. Law §

417-a.  Compensatory damages can only be awarded one time for an

injury.  *Gentile v. County of Suffolk*, 926 F.2d 142, 153 (2d Cir.

1991); *Wickham Contracting Co. v. Board of Education*, 715 F.2d

21, 28 (2d Cir. 1983).

*Fees*

The Second Circuit uses the "presumptively reasonable fee,"

known as the "lodestar figure" (or "lodestar") in other circuits,

to determine reasonable attorneys fees for federal claims.  *See*

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of*

---

[13] Plaintiff's expert testified that the Blue Book Value of the vehicle at the
time of purchase was $17,450.  That figure is then devalued by 20% due to the
vehicle's rental history for a retail value of $13,960.

*Albany,* 493 F.3d 110 (2d. Cir. July 12, 2007); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1159 (2d Cir. 1994); *Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048, 2007 WL 1373118 (E.D.N.Y. May 8, 2007). Accordingly, the presumptively reasonable fee award is the appropriate method to determine fees for the TILA claim. In addition, the presumptively reasonable fee award, or lodestar, is used to make a fee determination in cases concerning claims of N.Y. Gen. Bus. Law § 349 and N.Y. Veh. & Traf. Law § 417-a. *See, e.g., Independent Living Aids, Inc. v. Maxi-Aids, Inc.,* 25 F.Supp.2d 127, 131-32 (E.D.N.Y. 1998) (awarding attorney fees on a N.Y. Gen. Bus. Law § 349 claim based on the lodestar calculation); *General Motors Corp. v. Villa Martin Chevrolet, Inc.,* 240 F.Supp.2d 182 (E.D.N.Y. 2002) (using the lodestar calculation to award attorney fees in a case involving N.Y. Veh. & Traf. Law § 496 because "New York courts typically apply a 'lodestar' analysis when setting fees pursuant to a fee-shifting statute") (internal citations omitted).

The presumptively reasonable fee "is arrived at by multiplying the number of hours reasonably expended on the litigations . . . by an hourly rate." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir. 1998). In the Second Circuit "any attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records." These records should specify, for each attorney, the

date, the hours expended and the nature of the work. *New York State Ass'n for Retarded Children, Inc., v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). However, "[i]t is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures." *Aiello v. Town of Brookhaven*, No. 94-CV-2622, 2005 WL 1397202, *9 (E.D.N.Y. 2005)(citing *Perdue v. City Univ. of New York*, 13 F.Supp.2d 326, 345 (E.D.N.Y. 1998).

Plaintiff seeks an award of attorney fees and costs in the amount of $86,569.52 pursuant to Fed. R. Civ. P. 54 (d) for prevailing on his claims against the defendants under the Truth in Lending Act, New York Vehicle and Traffic Law § 417-a and New York General Business Law § 349. Plaintiff has submitted contemporaneous time records in support of this fee motion. In addition, plaintiff has submitted attorney and paralegal affirmations as to the truthfulness of the time submissions and an affidavit from the office manager and bookkeeper of plaintiff's lawyer's firm to substantiate the payments for costs and expenses. Plaintiff has also submitted an affidavit from Allen J. Charne, the executive director of the New York City Bar Association's Legal Referral Service stating that his organization was unable to find qualified attorneys in the boroughs of Queens, Brooklyn or the Bronx willing to handle

consumer protection cases relating to automobile sales issues[14].

Plaintiff's memorandum in support of this fee motion discusses the appropriate hourly rates for attorneys in both the Eastern and Southern Districts of New York. It also discusses the qualifications and experience of each staff member from Sadis & Goldberg who worked on this case in order to support their requested hourly rates.

*Applicable Community and Prevailing Market Rates*

Plaintiff believes his attorneys should be compensated at the rates of attorneys practicing in the Southern District of New York, which are higher hourly rates than those found in the Eastern District. Defendants, in their initial Memorandum of Law in Opposition to Plaintiff's Motion for Attorneys' Fees did not oppose plaintiff's request for attorney compensation at Southern District rates. However, after the Second Circuit's decision in *Arbor Hill* was issued, defendants submitted a supplemental brief[15] arguing that plaintiff's attorneys should be compensated at the prevailing rates in the Eastern District of New York.

The reasonable rate used to determine the amount of

---

[14] Plaintiff notes that Mr. Charne's affidavit, dated June 21, 2005, was provided in support of Sadis & Goldberg's fee application in *Valverde et. al. v. Star Auto Sales of Bayside, Inc.,* Eastern District of New York docket number 04-CV-3625, an auto financing case in the Eastern District that also involved TILA and GBL § 349 claims.

[15] On April 30, 2007, I issued an order directing the parties to submit supplemental papers on the impact, if any, of the decision in *Arbor Hill* on the motion for fees in this case.

attorneys' fees to award in the Second Circuit is calculated

according to the prevailing rates in the district in which the

court sits. *Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d

23, 25 (2d Cir. 1983). The Second Circuit recently elaborated on

this point in *Arbor Hill,* saying, "the district court should

generally use the prevailing hourly rate in the district where it

sits to calculate the 'lodestar'... [however] the district court

may adjust this base hourly rate to account for a plaintiff's

reasonable decision to retain out-of-district counsel," and may

also adjust the base hourly rate for other case-specific

factors[16]. *Arbor Hill,* 493 F.3d at 112. The district court, who

is responsible for setting the base hourly rate, should also look

at, "what a reasonable, paying client would be willing to pay,"

to have the case litigated efficiently when "deciding whether to

use an out-of-district hourly rate in its fee calculation." *See,*

*generally,* 493 F.3d 110. The *Arbor Hill* decision noted that a

client who can recover attorney fees through a fee shifting

statute does not have much incentive to negotiate rates with his

attorney before litigation. *Id.* Therefore, "the district court

must act later to ensure that the attorney does not recoup fees

that the market would not otherwise bear." *Id.*

---

[16] These factors include, "the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively..., the timing demands of the case, whether the attorney had an interest ... in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting *pro bono*, and other returns ... the attorney expected from the representation." *Arbor Hill,* 2007 WL 2004106 at *1.

A reasonable, paying client would presumptively hire a firm located near the courthouse in which the litigation is to take place and one which has a high rate of success with similar cases. Indeed, plaintiff had, in this case, researched consumer protection law firms in the New York City area on the Internet. He chose Sadis and Goldberg, which is located in the Southern District of New York, based primarily on the firm's rate of success posted on the firm's web site regarding consumer awards in previous cases. (Diaz Affirmation in Further Support.) Defendants have pointed to no firm located in this district with an equal or better rate of success[17]. Hiring an attorney located near the courthouse in which the litigation is to take place minimizes expenses incurred as a result of an attorney's travel time. The principal courthouses for the Southern and Eastern Districts of New York are minutes away from each other, on either side of the East River. Travel time between the Southern and Eastern Districts is minimal. Here, it is safe to say that a reasonable paying client would, like Diaz, hire the firm even though it is located in the Southern District of New York, based on its experience, success rate and proximity to the courthouse in which the litigation would take place. Accordingly, I will

---

[17] Allen J. Charne, the executive director of the New York City Bar Association's Legal Referral Service ("LRS") stated that his organization refers all complaints related to automobile sales issues to Sadis and Goldberg. The LRS was unable to find any other qualified attorneys in the boroughs of Queens, Brooklyn or the Bronx to handle consumer protection cases related to automobile sales. (Charne Aff., June 21, 2005.)

apply the usual billing rates of attorneys located in the
Southern District.

### *Attorney and Staff Hourly Rates*

In order to set the hourly rates, courts compare the
attorneys' usual billing rates with the prevailing market rates
in the applicable district. *Miele v. New York State Teamsters
Conference Pensions & Retirement Fund,* 831 F.2d 407 (2d Cir.
1987). The hourly rates charged by each attorney and paralegal
in this case comport with the rate charged generally in the
Southern District, by lawyers with comparable experience.

In the Southern District, awarded rates range from $250 per
hour for mid-level associates to over $400 per hour for senior
partners. *See e.g., M.S. v. New York City Board of Education*,
2002 WL 31556385 (S.D.N.Y. 2002) (8th year associates billed from
$310-$375 per hour); *Anderson v. City of New York*, 132 F.Supp.2d
239 (S.D.N.Y. 2001) ($250 per hour for a mid-level associate).
In addition, paralegal time is reasonably compensated at an
hourly rate over $120 in the Southern District. *See e.g., Yurman
Designs Inc. v. PAJ, Inc.*, 125 F.Supp.2d 54 (S.D.N.Y. 2000)
(awarding a paralegal rate of $162.35 per hour); and *Berlinsky v.
Alcatel Alsthom Compagnie Generale D'Electricite,* 970 F.Supp. 348
(finding a paralegal hour fee of $150 reasonable).

Five attorneys and two paralegals at Sadis and Goldberg
worked on this case. Attorney Douglas R. Hirsch is a partner and
head of the litigation department. He has been practicing law

since 1990.  His hourly rate for litigation ranges from $375 to $450, and billed in this case at a rate of $375 per hour. Attorney Dennis R. Hirsch is a ninth year associate at Sadis & Goldberg.  His hourly rate is $305.  Attorney Francis Bigelow is a sixth year associate and billed in this case at $245 per hour. Attorney David Kasell graduated from law school in 1995 and worked for a law firm for one year before working as a financial consultant.  He joined Sadis & Goldberg in 2006.  His hourly rate is $305.  Attorney Mitchell Taras is a tenth year associate with five years of experience in automobile and automobile financing litigation.  His hourly rate is $375.  Paralegals Pat Green and Michael Crespo both have over seven years of experience and are billed at an hourly rate of $120.

Since these billing rates are in line with the prevailing market rates, fees will be awarded at the following hourly rates:

| Name | Requested / Awarded Rate |
|---|---|
| Douglas R. Hirsch | $375 |
| Dennis Hirsch | $305 |
| Mitchell B. Taras | $305 |
| David Kasell | $305 |
| Francis Bigelow | $245 |
| Michael Crespo | $120 |
| Pat Heaney | $120 |

*Compensation for Time Spent on Unsuccessful Causes of Action*

Plaintiff contends that he should recover fees and costs for all the claims in this action, even on claims he lost and on claims which were voluntarily dismissed. Defendants argue that plaintiff is not entitled to attorney fees for time spent on unsuccessful claims and also request a reduction in the lodestar amount because plaintiff achieved only a limited success.

"Although there is a 'strong presumption' that the lodestar figure represents the 'reasonable' fee, other considerations may lead to an upward or downward departure from the lodestar." *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992)(internal quotation marks and citation omitted). "A prevailing party who is entitled to a fee award for his successful prosecution of successful claim is not entitled to a fee award for unsuccessful claims that were 'based on different facts and different legal theories.'" *Kirsch,* 148 F.3d at 173 (citing *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). In addition, the lodestar award may be adjusted on the basis of the results obtained, the "party advocating such a departure, however, bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee." *Hensley*, 461 U.S. 424.

The Supreme Court, in *Hensley*, constructed a framework to help determine whether a plaintiff's partial or limited success requires a reduction in the lodestar amount. 461 U.S. at 434-37. A district court looks to see if the plaintiff failed on any

claims wholly unrelated to the claims on which he succeeded.
Hours spent on the wholly unrelated, unsuccessful claims should
not be included in the lodestar amount. *Id.* at 434-35. Next,
the district court looks at whether there were any unsuccessful
claims that were interrelated to the successful claims. If such
claims exist, the court has to decide whether the plaintiff's
limited success warrants a reduction in the lodestar award. *Id.*
at 436. If the plaintiff has obtained excellent results, there
should be no reduction in the fee award. *Id.* at 435.

Plaintiff argues that he should recover fees and costs for
all the claims in this action. In support of this position,
plaintiff cites *Grant* as instructing courts to compensate counsel
for "time spent on unsuccessful claims or motions, so long as the
unsuccessful claims or motions are not 'wholly unrelated' to the
prevailing claims." (Pl's Mem. of Law in Supp. of Pl's Mot. for
an Award of Reasonable Att'y Fees, pg. 12 (citing *Grant,* 973 F.2d
96).) Plaintiff asserts that all his claims are related because
they all stemmed from his purchase and finance of the subject
vehicle.

In order to determine whether claims are related, courts
have looked at whether claims are based on a "common core of
facts," "related legal theories," or "require essentially the
same proof." *Kerin v. U.S. Postal Service,* 218 F.3d 185, 194 (2d
Cir. 2000). Here, the claims may be divided into three
categories: financing, disclosure and warranty. Plaintiff

prevailed on the TILA and N.Y. Veh. & Traf. Law § 417-a claims. In addition, he prevailed on the N.Y. Gen. Bus. Law § 349 claim to the extent that such claim was premised on violations of TILA and N.Y. Veh. & Traf. Law § 417-a. All these claims fall under the categories of financing and disclosure. Plaintiff was unsuccessful or voluntarily discontinued all of the warranty related claims.

*Equal Credit Opportunity Act Claims*

Plaintiff's Equal Credit Opportunity Act ("ECOA")claims share a common core of facts with the successful TILA claims and therefore, plaintiff can recover for the time his counsel spent developing those claims. The ECOA claim was based on the premise that Paragon failed to give plaintiff notice that Paragon obtained credit in a different amount and at different terms than Diaz requested for the purchase of the automobile. Mem. Op. and Order, 23, Mar. 29, 2006. The TILA claim was similarly based upon changes in the credit and finance agreement. Mem. Op. and Order, 18, Mar. 29, 2006. Therefore, I decline to remove time spent on the ECOA claims from the lodestar calculation.

*New York's Used Car Lemon Law and Magnuson-Moss*

*Warranty Act Claims*

Plaintiff did not succeed on any of the warranty related claims, specifically claims based on New York's "Used Car Lemon Law," New York General Business Law § 198-b, and the Magnuson-Moss Warranty Act. Defendants contend that because these claims

are not related to the successful claims, any time spent on these

claims should be removed from the lodestar calculation.  I agree.

Where a plaintiff has only achieved partial or limited success,

even where the claims were "interrelated, nonfrivolous, and

raised in good faith," the number of hours spent on the

litigation may be excessive.  *Hensley*, 461 U.S. at 440.

"Congress has not authorized an award of fees whenever it was

reasonable for a plaintiff to bring a lawsuit," rather a

plaintiff is permitted to recover fees from the defendant in

specific instances.  *Id.*  As a result, time spent on the New York

General Business Law § 198-b and the Magnuson-Moss Warranty Act

claims and their withdrawal will not be included in the lodestar

calculation[18].

---

[18]  The following are the dates, employees, descriptions and amount of time
that was spent on these unrelated claims:

| Date | Employee | Description | Hours |
|------|----------|-------------|-------|
| 2/03/05 | PH | T/c w/client – he needs copy of invoice for car repair from accident from the auto body shop, informed him I need to have the name and address of the shop if it does not appear on their invoice.  He will fax it to me as soon as possible. | .1 |
| 2/15/05 | PH | Rec'd clt's invoice for car repair from accident, sent same w/letter to Bonnist (supplemental discovery) via reg. mail. | .3 |

*Reduction based on Partial or Limited Success*

Defendants correctly state that the degree of success is an important consideration when awarding attorney fees. *See e.g., Parrish v. Sollecito,* 280 F.Supp.2d 145 (S.D.N.Y. 2003); *Grant,* 973 F.2d at 101. Diaz filed eight claims against each defendant. He prevailed on three causes of action against Paragon Motors and on two[19] causes of action against Americredit[20]. The relief Diaz initially sought was greater than the relief he obtained after the trial. The warranty claims Diaz filed would have granted him

| 5/25/05 | DH | Continued with drafting reply papers on SJ motion, completed arguments on ECOA claim, V&T 417-a claim, conf'd with DRH re wether to oppose warranty claims, likelihood or success at trial on these claims, etc. *The number of deducted hours here is reduced from 3.1 to 1.5 because some of the tasks performed are appropriate for compensation, while others are not. Kirsch,* 148 F.3d at 173 (where hours are unnecessary, the court has discretion to deduct a reasonable portion of the hours claimed). | 1.5 |
|---------|----|---|----|
| 4/18/06 | DH | Conference with FB re whether we should dismiss all claims we did not succeed on and proceed towards inquest, discussed the need to obtain client's consent. | .3 |
| 6/06/06 | FB | Attention to letter from adversary C Bonnist; drafted stipulation withdrawing claims for revocation and breach of implied warranty. | .4 |
| 6/06/06 | PH | Faxed stipulation (of withdrawal) to Bonnist, rec'd confirmation. | .2 |

[19] *See* footnote 8, *supra.*

[20] Defendants make no distinction between their respective positions with respect to this motion. Accordingly, any claim by defendant Americredit that its liability for fees and disbursements should be less that the co-defendants' because of plaintiff's failure to prevail against defendant Americredit is not taken into account in the Court's award of fees and disbursements.

revocation of acceptance and a refund of the full purchase price
of the automobile had he prevailed on those claims.   N.Y. Gen.
Bus. Law § 198-b; 15 U.S.C. § 2310.  Diaz did not prevail on any
of his warranty claims, those claims were either dismissed on
summary judgment or voluntarily withdrawn by Diaz.  (Mem. Op. and
Order, 23, Mar. 29, 2006; Stipulation to Voluntarily Dismiss
under Rule 41 (a)(ii), June 7, 2006.)  However, since I have
already taken into account the fact that Diaz dismissed his
claims brought under the warranty related causes of action above,
by declining to award plaintiff's attorneys any compensation for
the time spent on warranty related claims, I see no need to
reduce the fee award further on this basis.

There remains the question whether plaintiff achieved only
partial success on the claims in which he prevailed.  It is true
that plaintiff made no recovery on his claim under N.Y. Gen. Bus.
Law § 349.  However, that is only because an award of damages on
that claim would have duplicated his recovery under TILA and N.Y.
Veh. & Traf. Law § 417-a, which can hardly be called limited
success.  On the claims in which he prevailed, he recovered all
that he was entitled to.  Accordingly, I will not further reduce
plaintiff's award for only partial success on the claim on which
he prevailed.

*Proportionality*

The attorney's fee award is substantially greater than the
damages award.  The Second Circuit has rejected a rule requiring

strict proportionality between the fee award and the damages award at least in the context of civil rights statutes. *Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522 (2d Cir. 1991). The court in *Cowan* stated that "a presumptively correct lodestar figure should not be reduced simply because a plaintiff recovered a low damage award". *Id.* at 526.[21]

The same rationale applies to awards of attorney's fees under the fee shifting provisions of TILA. Since recoveries under TILA are typically small, limited to the statutory damages provided in 15 U.S.C. § 1640(a) due to the difficulty in proving actual damages, a proportionate fee award would often be insufficient to attract competent counsel.

TILA's attorney's fees provision, 15 U.S.C. § 1640(a)(3), seeks to vindicate Congress' intent by "creat[ing] a system of 'private attorney generals' to aid in effective enforcement of the substantive statute." *Nigh v. Koons Buick Pontiac GMC, Inc.*, 384 F. Supp.2d 915, 919 (E.D.Va. 2005) (quoting *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 233 (1st Cir. 1990)), aff'd

---

[21] The Second Circuit has recently reaffirmed its decision in *Cowan* that proportionality of the fee award to the damages award cannot serve as the sole factor for awarding fees in civil rights cases. *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ("If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error."); *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425-26 (2d Cir. 1999). "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation." *Id.* at 426 (citing *Rivera*, 477 U.S. at 575 (plurality opinion) ("Congress did not intend for fees in civil rights cases . . . to depend on obtaining substantial monetary relief.")).

in part and vacated in part, 458 F.3d 183 (4th Cir. 2007); *see also New Century Mortgage Corp. v. Payton*, 2004 WL 524693, at *1 (N.D.Ill. March 11, 2004) ("In enacting the Truth in Lending Act, Congress contemplated that the statute would be enforced by private litigants acting as private attorneys general") (internal quotation marks and citations omitted). *See Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 802 (6th Cir. 1996) (Under TILA "[t]he attorney's fees are not limited by the amount of [plaintiff's] recovery"), *cert. denied*, 520 U.S. 1252 (1997). After the Supreme Court's remand in *Nigh*, the district court awarded fees for the initial trial proceedings in the amount of $29,129.10, having reduced the requested amount by forty percent because of plaintiff's lack of success on his other claims. In awarding this amount, the Court cited *Purtle* for the proposition that "recovery of attorney's fees under the TILA are not limited by the amount of the recovery." *Nigh*, 384 F. Supp.2d at 924. This award was appealed to the Fourth Circuit. 478 F.3d 183 (4th Cir. 2007). Upon review, the Fourth Circuit, due to its uncertainty of whether the district court meant to award $26,129.10 or $29,129.10, vacated the award and remanded the case to the district court simply to have the district court recalculate the trial fee award. *Id.* at 190. However, the Fourth Circuit noted that "We would have no trouble approving either the $26,129.10 or the $29,129.10 award - both seem reasonable under the circumstances, and we upheld $26,129.10 once

already . . ." *Id.* at 188.

Nor are attorney's fees awarded under N.Y. Gen. Bus. Law §
349 and N.Y. Veh. & Traf. Law § 417-a required to be
proportional.[22] *See Wilson v. Car Land Diagnostics*, 2001 WL
1491280, at *2 (S.D.N.Y. Nov. 26, 2001) (awarding $10,000 in
attorney's fees under § 349, plaintiff's only successful claim,
although damages were only $2,000, noting "[a]n award of
attorney's fees that is substantially larger than the verdict may
be unusual, but in this case it is certainly not excessive"). As
Judge Lynch further noted in *Wilson*, "the amount in controversy
in [consumer protection] suits will often be small" and the fee
must be sufficient to attract competent counsel. *Id.* at *3.

Applying this law to the facts of this case, I conclude that
a further reduction in the attorney's fees because of the
relation of the award to the fees sought is not appropriate.

---

[22] Defendants cite to *Loza v. F&D Garet Motors, Inc.*, No. 26542/02, 2007 N.Y.
Misc. LEXIS 328 (N.Y. Sup. Ct. Jan. 16, 2007), for the proposition that the
award of plaintiff's attorney's fees should be significantly reduced from the
request. *Loza* is a case that Sadis & Goldberg, plaintiff's counsel, argued
before Queens Supreme Court. Sadis & Goldberg's client in *Loza* brought claims
for violation of the Magnuson Moss Warranty Act and N.Y. Gen. Bus. Law § 349.
Despite counsel's success, the Queens Supreme Court reduced counsel's fee and
disbursement request from $50,861.89 to $7,500.00 for fees and $201.89 for
disbursements. The court offered no explanation for this reduction, other
than mentioning that the fees sought were significantly higher than the
damages awarded to plaintiff. The decision appears to conflict with those in
other New York cases considering results achieved as only one factor among
others to be considered in a fee award. *See, Riordin v. Nationwide Mut. Fire
Ins. Co.*, 977 F.2d 47, 54 (2d Cir. 1992); *Podhorecki v. Lauer's Furniture
Stores, Inc.*, 201 A.D.2d 947, 607 N.Y.S.2d 818 (4th Dep't 1994) ("There is no
bright[ ]line rule that a fee award [pursuant to New York General Business Law
§ 396]. . . must be proportional to the amount at issue . . . it is not
sufficient to state that the fee must be reduced because the court cannot, 'in
good conscience,' award what plaintiffs request" )(internal citations
omitted).

Applying the *Arbor Hill* factors, 495 F.3d at 112, the case
required familiarity with an area of law with which few trial
attorneys are acquainted, and in which plaintiff's attorneys have
developed some expertise.  The somewhat complicated negotiations
leading to the purchase of the vehicle presented a measure of
factual complexity.  The case required the resources of an expert
to establish the reduction of value in the car because of its
prior use as a rental vehicle.  Since the client's recovery was
not large, the lawyer's success cannot be expected to attract
other clients.  In sum, an award below the approximately $65,000
approved by this decision would substantially reduce an already
low measure of interest by members of the bar in handling cases
such as this.

     *Pre-Litigation Fees*

     Plaintiff filed his complaint with this Court on December
29, 2003.  Plaintiff's motion for an award of fees requests
compensation for work done on this matter prior to filing the
complaint, dating back to June 26, 2003.  Defendants oppose any
award of fees for work prior to the date the complaint was filed.
In *Peterson v. Continental Casualty Co.,* parsing another fee-
shifting statute, 29 U.S.C. § 1132(g)(1), the Court of Appeals
discussed whether Congress intended the term 'action' to limit
recovery for work performed by an attorney after the filing of a
complaint.  282 F.3d 112, 119 (2d Cir. 2002).  It determined that
absent statutory language to the contrary, "the term 'action'

[is] restricted to formal judicial proceedings...and connotes a formal adversarial proceeding under the jurisdiction of a court of law." *Id*. Accordingly, pre-filing work was not recoverable.

The statutes at issue here likewise appear to refer to the recovery of fees for work performed in an "action." N.Y. Veh. & Traf. Law § 417-a; 15 U.S.C. § 1640(e) ("[a]ny action under this section may be brought in any United States District Court, or any other court of competent jurisdiction..."); N.Y. Gen. Bus. Law § 349 ("any person who has been injured by reason of any violation of this section may bring an action...the court may award reasonable attorneys fees..."). The "statutory scheme" of each statute "provides support for a construction of the fee-shifting provision limited to actions under the jurisdiction of a court of law." *Peterson*, 282 F.3d at 120. Accordingly, I decline to award any fees which were incurred prior to December 29, 2003, the date this action was commenced[23].

*Paralegal and Clerical Duties*

---

[23] This results in a deduction of 2.3 hours of paralegal work and 16.6 hours of attorney work from the following people:

| Employee | Hours Deducted |
|---|---|
| Douglas R. Hirsch (attorney) | 4.7 |
| Dennis Hirsch (attorney) | .5 |
| Mitchell B. Taras (attorney) | 11.4 |
| Michael Crespo (paralegal) | 2.3 |

The defendants next object to any award of attorney or paralegal fees for the time spent preforming clerical work such as making photocopies, faxing documents and mailing documents. Such work may not be billed at attorney or paralegal rates. *Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463 (1989). Plaintiff argues that the court in *Bristol Investment Fund, Inc. v. Carnegie International Corp.,* appears to award fees compensating attorneys and paralegals for the performance of clerical tasks at their customary rates. 302 F.Supp.2d 177 (S.D.N.Y. Dec. 2, 2003). What the court *Bristol* said was that,"...the invoices include various disbursements that were associated with the tasks Bristol's attorneys undertook in this action, including messenger, fax, express mail, copying and filing fees, among other things. These fees [sic] appear to be both typical and reasonable." *Id* at 179(emphasis added). While the use of the terms "fees" to refer to what was initially described as "disbursements" is confusing, in context it is clear that time spent on the tasks of photocopying, faxing, mailing, and filing are all clerical in nature and cannot be billed at either attorney or paralegal rates whether performed by an attorney, paralegal or clerk.

Below is a list of the dates[24], employees, descriptions and

---

[24] Since I have excluded all tasks prior to the filing of the complaint from the calculation, this table only includes dates and tasks dated on or after December 29, 2003.

hours expended on clerical tasks appropriately excluded from the

award of fees or disbursements.

| Date | Paralegal | Description | Hours |
|------|-----------|-------------|-------|
| 12/31/03 | MC | Copied complaint, prepared cover letter, federal express package for service on Secretary of State. | .9 |
| 1/05/04 | MC | Prepared checks, cover letter and FedEx to serve complaints on Secretary of State. | .4 |
| 1/14/04 | MC | Copied and sent original affidavit of service with copy to court for filing with SASE and cover letter. | .3 |
| 5/18/04 | MC | Letter to opp. counsel with settlement demand copied and sent out, document requests for dealer also copied and sent out. | .5 |
| 10/04/04 | MC | Copy of Cherin order sent to Bonnist. | .2 |
| 10/19/04 | MC | Faxed letter to Judge to Craig Bonnist, original sent FedEx to Judge. | .4 |
| 10/29/04 | MC | Copied and organized deposition exhibits, sent plaintiff's exhibits to opp. counsel. | .9 |
| 11/17/04 | MC | Copied file document, prepared FedEx for expert. | .6 |
| 11/19/04 | MC | EBT to client and opp. counsel. | .7 |
| 11/29/04 | MC | Fax of deposition transcript to David Stivers. | .2 |
| 12/21/04 | PH | Copies of EBT transcripts. | .3 |
| 4/12/05 | MC | Copied, collated motion for summary judgment and memorandum of law (velo binding for memo), prepared exhibits, original for court, copy for file.  All above sent out and filed accordingly. | 4.8 |

| 4/13/05 | MC | Copied, collated motion for summary judgment and memorandum of law (velo binding for memo), prepared exhibits, original for court, copy for file, prepared envelope, monarch label for copy sent to opp. counsel, prepared filing slip for court copy, also prepared blue backs, affirmation of mailing. All above sent out and filed accordingly. | 1.6 |
|---------|----|----|-----|
| 4/21/05 | MC | Prepared Redweld and filed away summary judgment materials. | .3 |
| 6/01/06 | MC | FedEx prepared for judge and for opp. counsel. | .5 |
| 6/06/06 | PH | Faxed stipulation to Bonnist, rec'd. | .2 |
| 7/31/06 | PH | Tracked FedEx pkg. sent to opp re: trial exhibits for opp. review. Online FedEx confirmed rec'd, print out of confirmation rec'd. Entered into Redweld. | .2 |
| 8/09/06 | MC | Joint exhibits separated, collated, copied, with exhibit tabs. Federal [express]. | 1.8 |
| 8/17/06 | MC | Federal express envelopes prepared for Judge Sifton and opposing counsel for memorandum of law. Memo copied, collated, sent to same for next day delivery. | .4 |
| 9/18/06 | PH | MC confirmed that SavOn confirmed fax receipt of subpoena sent Thurs. | .2 |
| 10/12/06 | PH | Delivered FedEx pkgs for FB to FedEx office. | .3 |
| 10/25/06 | MC | Faxed letters to Judge from file. | .2 |

| Total | | | 15.9[25] |
|-------|--|--|----------|

(Pl.'s Ex. of Time Entries in Affirmation of Mot. for Att'y Fees, Feb. 9, 2007).

The following two entries describe both non-compensable clerical tasks (such as "fedex'd reply brief") and paralegal tasks (such as "attempting to ECF with court", which are not clerical tasks, at least at this stage of IT sophistication). These entries will be included in the award at the paralegal's hourly rate. Each of these tasks did not take up much of the paralegal's time, and, were best performed by a single individual. *Marisol A. ex rel. Forbes v. Guliani*, 111 F.Supp.2d 381, 395 (S.D.N.Y. Aug. 30, 2000).

| Date | Attorney | Description | Hours |
|------|----------|-------------|-------|
| 10/17/06 | PH | PDF'd post-trial reply brief and reply brief letter. Attempting to ECF with court. ECF'd and fedex'd reply brief to Judge. | .4 |

---

[25] This results in a deduction of 15.9 hours of paralegal work from the following people:

| Employee | Hours Deducted |
|----------|----------------|
| Pat Heaney | 1.1 |
| Michael Crespo | 14.8 |

| 6/02/05 | PH | PDF plaintiff's reply memo of law in support of motion for summary judgment and in opposition to defendant's cross-motion. Electronically filed, served copy on opposition and judge (courtesy copy) via FedEx. | 1.0 |
|---------|----|-----|-----|

The following tasks, were performed by an attorney but could have been performed by a paralegal, and therefore, will be billed at a paralegal's hourly rate.

| Date | Attorney | Description | Hours |
|------|----------|-------------|-------|
| 4/14/05 | DH | Attention to voicemail from opp counsel who is apparently missing a page of the statement of facts, confirmed what was missing via telephone and emailed pdf version of document over. | .2 |
| 4/15/05 | DH | Telephone conference with Judge's law clerk confirming receipt of courtesy copies of the motion papers and clarifying the issues relating to ECFing the exhibit package. | .2 |
| 4/21/06 | FB | Checked court's website for SJ order entered by clerk, not on site yet. | .2 |
| 12/12/06 | FB | Checked court's website for decision, no decision. | .1 |
| 12/20/06 | FB | Checked court's website for decision, not issued yet. | .1 |
| **Total** | | | **.8**[26] |

---

[26]  This results in a deduction of .8 hours of attorney work from the following people, and instead billed at the hourly paralegal rate:

| Employee | Hours Deducted |
|----------|----------------|
| Dennis Hirsch | .4 |

(Pl.'s Ex. of Time Entries in Affirmation of Mot. for Att'y Fees,
Feb. 9, 2007).

The following two entries again describe both compensable
and non-compensable tasks that an attorney performed.  These
entries will be included in the award at the attorney's hourly
rate.  "It would be unreasonable to expect attorneys to delegate
every ministerial duty they perform because, '[t]he time spent
delegating the task could well exceed the time spent by the
attorney' performing the task."  *Marisol A. at* 395 (S.D.N.Y. Aug.
30, 2000) (internal citation omitted).

| Date | Attorney | Description | Hours |
|------|----------|-------------|-------|
| 10/25/05 | FB | Attention to ECF re request for adjournment; gave letter requesting same to PG to file via ECF; call to Judge Levy's chambers re request; attention to order from court to call adversary C. Bonnist re same; faxed copy of court's order to Bonnist. | .3 |
| 8/17/06 | FB | Finalized reply trial brief; reviewed FedEx packages for mailing same; call from adversary M. Shilinski re stip as to facts for trial. | .3 |

(Pl.'s Ex. of Time Entries in Affirmation of Mot. for Att'y Fees,
Feb. 9, 2007).

---

| | |
|---|---|
| Francis Bigelow | .4 |

*Total Fees Awarded*

In sum, applying the aforementioned Eastern District of New York rates and deducting hours for which plaintiff is not entitled to compensation, I award the plaintiff's attorneys $56,189 in attorney fees.

| Employee | Rate | Hours | Total ($) |
|---|---|---|---|
| Douglas R. Hirsch | $375 | 8.6 | 3,225.00 |
| Dennis Hirsch | $305 | 123.9 | 37,789.50 |
| Mitchell B. Taras | $305 | 2.7 | 823.50 |
| David Kasell | $305 | 13.1 | 3,995.50 |
| Francis Bigelow | $245 | 66.2 | 16,219.00 |
| Michael Crespo | $120 | 1.4 | 168.00 |
| Pat Heaney | $120 | 16 | 1,920.00 |
| Attorney Performed Paralegal Work | $120 | 0.8 | 96.00 |
| **Total** | | | **$64,236.50** |

*Disbursements*

*Expert Witness Fees*

Defendants argues that the $10,837.00 expert witness fee of David Stivers is not recoverable above a $40.00 daily witness fee provided by 28 U.S.C.A. §1821 and §1920. Defendants states that the statutes in this case do no explicitly provide for recovery of expert witness fees, as allowed by other statutes. *See e.g.,* 42 U.S.C.A. §2000e-5.

Plaintiff argues that expert witness fees are recoverable because to hold otherwise would deny a consumer the necessary

protection. *Murphy v. Arlington Central School Dist. Board of Ed.,* 402 F.3d 332 (2d Cir. 2005) (allowing an award of expert witness fees under IDEA statute). However, the decision in the cited case was overturned by the Supreme Court, *Murphy v. Arlington Central School Dist. Board of Ed.,* 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006). The Supreme Court held that the list of recoverable costs was the list enumerated by 28 U.S.C. § 1920. *Id.* The statutes in question in this case also make no explicit allowance for recovery of expert witness fees. Accordingly the witness fees of the expert in this case, the expert fees are taxable at $40.00 per day attendance fee as set forth in 28 U.S.C.A. §1821.

### *Federal Express Fees*

Defendants' final request is a fee reduction in the amount of $473.81 for Federal Express fees. Defendants argue that such fees are not taxable as costs of litigation because they, too, are not listed in 28 U.S.C. § 1920. However, costs are ordinarily recoverable if they are "incidental and necessary to the litigation." *Tips Exports, Inc., v. Music Mahal, Inc.,* 2007 WL 952036 (E.D.N.Y. Mar. 27, 2007). These costs include postage. *Id.* Accordingly, the Federal Express fees in the amount of $473.81 are appropriately included in the award.

### *Total Disbursements Awarded*

Plaintiff requests an award of $13,914.02 in disbursements.

Taking into account only $40.00 for the expert witness, the Federal Express fees and other requested costs, plaintiff is awarded $3,117.02.

**CONCLUSION**

For the reasons set forth above, the plaintiff is entitled to attorneys fees and disbursements in the total amount of $67,353.52, jointly and severally against both defendants.  The Clerk is directed to transmit a copy of the within to all parties and to Magistrate Judge Levy.

SO ORDERED.

Dated :   Brooklyn, New York
          September 28, 2007

                     By: /s/ Charles P. Sifton (electronically signed)
                              United States District Judge