Eddie M. Diaz,

                          Plaintiff,            CV-03-6466(CPS)(RML)

     - against -                               MEMORANDUM OPINION
                                               AND ORDER
Paragon Motors of Woodside, Inc. and
Americredit Financial Services, Inc.

                          Defendants.

------------------------------------X
SIFTON, Senior Judge.

     Eddie Diaz ("Diaz" or "plaintiff") seeks to recover against

Paragon Motors of Woodside, Inc. ("Paragon") and Americredit

Financial Services, Inc. ("Americredit") (collectively

"defendants") attorneys' fees, disbursements, and costs in the

amount of $33,981.68, pursuant to Rule 54(d) of the Federal Rules

of Civil Procedure[1].  For the reasons set forth below, plaintiff

is entitled to attorneys' fees and disbursements in the amount of

$23,242.68.  What follows sets forth the findings of fact and

conclusions of law on which this determination is based as

required by Rule 58 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 58(a)(3).

## Background

     Familiarity with this Court's earlier decisions, findings

and conclusions is assumed, but I provide a brief summary

---

[1] A court may award attorneys' fees and related non-taxable expenses on
application by a party.  Fed.R.Civ.P. 54(d)(2)(A).

herein.[2]

This motion for fees stems from an action Diaz commenced against Paragon Motors alleging that defendant Paragon Motors violated (1) the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*,[3] (2) the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 1691,[4] (3) New York's Vehicle & Traffic Law § 417-a[5] (4) New York's "Used Car Lemon Law," New York General Business Law § 198-b,[6] (5) the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2310,[7] by breaching (a) express warranties (b) implied warranties and (c) revocation of acceptance, and (6) New York General Business

---

[2] *See Diaz v. Paragon Motors of Woodside, Inc.,* 424 F. Supp.2d 519 (E.D.N.Y. 206) ("Diaz I"); *Diaz v. Paragon Motors of Woodside, Inc.*, No. CV-03-6466, 2007 WL 295602 (E.D.N.Y. Jan. 29, 2007) ("Diaz II"); *Diaz v. Paragon Motors of Woodside, Inc.*, 2007 WL 2903920 (E.D.N.Y. October 01, 2007) ("Diaz III"); *Diaz v. Paragon Motors of Woodside, Inc.*, Docket Entry #74 (E.D.N.Y. Nov. 21, 2007) ("Diaz IV").

[3] Pursuant to 15 U.S.C. § 1640, an individual bringing a TILA claim may recover: 1) actual damages; 2) twice the amount of any finance charge in connection with the transaction, not less than $100 nor greater than $1,000; 3) costs of the action, together with a reasonable attorney's fee as determined by the court.

[4] An individual bringing suit under ECOA may be entitled to actual damages, punitive damages up to $10,000, equitable and declaratory relief, as well as costs and attorney's fees. 15 U.S.C. § 1691e.

[5] "A consumer injured by a violation of this section may bring an action to recover damages. Judgment may be entered for three times the actual damages suffered by a consumer or one hundred dollars, whichever is greater. A court may also award reasonable attorneys' fees to a prevailing plaintiff buyer." NY V&T § 417-a (4).

[6] If a dealer fails to honor the warranty as provided in NY GBL § 198-b, "the dealer shall accept return of the used motor vehicle from the consumer and refund to the consumer the full purchase price." N.Y. General Business Law § 198-b(c)(1).

[7] Consumers may recover "a sum equal to the aggregate amount of cost and expenses (including attorneys' fees) . . . unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate." 15 U.S.C. § 2310(d).

Law § 349 by its deceptive sales practices.[8]  In addition,
plaintiff alleged that (7) co-defendant Americredit should be
held liable for damages on claims which plaintiff asserts against
co-defendant Paragon, pursuant to 16 C.F.R. § 433.2 (the "Holder
Rule"), as a provider of consumer credit.

On March 29, 2006, I issued Diaz I with respect to
plaintiff's motion for partial summary judgement on liability
with respect to the TILA, ECOA and N.Y. Veh. & Traf. Law § 417-a
claims and defendants' cross motions for summary judgment on all
claims.  Diaz I granted plaintiff summary judgment on liability
with respect to its claims under TILA and N.Y. Veh. & Traf. Law §
417-a, and on N.Y. Gen. Bus. Law § 349 to the extent that such
claim was premised on violations of TILA and N.Y. Veh. & Traf.
Law § 417-a.[9]  I granted defendants' summary judgment on all
other claims with the exception of the MMWA breach of implied
warranty claim and the MMWA revocation of acceptance claim.  In
June, the parties filed a joint stipulation voluntarily

---

[8] "In addition to the right of action granted to the attorney general pursuant
to this section, any person who has been injured by reason of any violation of
this section may bring an action in his own name to enjoin such unlawful act
or practice, an action to recover his actual damages or fifty dollars,
whichever is greater, or both such actions. The court may, in its discretion,
increase the award of damages to an amount not to exceed three times the
actual damages up to one thousand dollars, if the court finds the defendant
willfully or knowingly violated this section. The court may award reasonable
attorney's fees to a prevailing plaintiff."  McKinney's General Business Law §
349(h).

[9]  Because TILA provides for more limited assignee liability than the Holder
Rule, 16 C.F.R. § 433.2, I granted Americredit's motion for summary judgment
on plaintiff's TILA claim.  *Diaz v. Paragon Motors of Woodside, Inc.,* 424 F.
Supp.2d 519, 544 (E.D.N.Y. 2006).

discontinuing the MMWA claim.

I held a bench trial on October 11, 2006 to determine whether the plaintiff was entitled to damages as a result of defendants' violations of TILA, N.Y. Veh. & Traf. Law § 417-a and N.Y. Gen. Bus. Law §349. In Diaz II, issued in January 2007, following the trial, I awarded plaintiff $1,000 in damages against Paragon Motors for violations of TILA, and $7,890 in damages against both Paragon Motors and Americredit for violations of N.Y. Veh. & Traf. Law § 417-a. I also concluded that defendants violated New York General Business Law § 349, but I did not award Diaz any damages for prevailing on this claim because the damages were duplicative of the damages recovered under TILA and N.Y. Veh. & Traf. Law § 417-a.

On February 9, 2007, plaintiff applied for attorneys' fees and disbursements ("February 2007 Motion"), as a prevailing party under the Truth in Lending Act,[10] New York Vehicle and Traffic Law § 417-a,[11] and New York General Business Law § 349(h),[12] for all fees, costs, and disbursements incurred up to that point. On

---

[10] 15 U.S.C.§1640 (a)(3) provides that "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court."

[11] N.Y. Veh. & Traf. Law § 417-a(4) also allows the court to award a prevailing plaintiff reasonable attorney fees.

[12] N.Y. Gen. Bus. Law § 349(h) also provides for the award of attorneys' fees to a prevailing plaintiff.

October 2, 2007, I issued Diaz III, awarding plaintiff attorneys' fees, costs, and disbursements in the amount of $67,353.52. Defendants filed a motion for reconsideration on October 12, 2007. I denied this motion in Diaz IV on November 21, 2007. On December 4, 2007. Defendants satisfied the total judgment, including damages, attorneys' fees, costs, and disbursements totaling $76,243.53.

On December 7, 2007, plaintiff filed a second notice of motion pursuant to Federal Rule of Civil Procedure 54(d) for an award of attorneys' fees and disbursements incurred in litigating its February 2007 Motion and seeking to enforce the October 2, 2007 judgment. Plaintiff amended this notice on December 10 and 14, 2007. Plaintiff filed an Affirmation and Memorandum of Law in support on December 28, 2007.

For the reasons set forth below, I conclude that plaintiff is entitled to attorneys fees and disbursements in the total amount of $23,242.68 for litigating the February 2007 Motion and seeking to enforce the October 2, 2007 judgment.

## Discussion

Plaintiff seeks a second award of attorneys' fees as a prevailing party under the Truth in Lending Act, New York Vehicle and Traffic Law § 417-a, and New York General Business Law § 349(h), for the fees and disbursements incurred in litigating his February 2007 Motion and enforcing the October 2, 2007 judgment.

Defendants argue that the motion was not filed properly or in a timely fashion.  They also argue that certain fees are excessive or should not be found compensable.

I.  <u>Motion Was Properly and Timely Filed</u>

Defendants argue that this motion should be dismissed because it was not properly and timely filed.  Defendants note that plaintiff did not file a memorandum of law or affidavit in support of his motion until December 28, 2007, three weeks after he filed his initial Notice of Motion.  They also note that the initial Notice of Motion, filed on December 7, 2007, was untimely as the deadline was December 5, 2007.  Plaintiff argues that nothing in the Federal Rules of Civil Procedure or Local Rules of Civil Procedure ("Local Rules") requires that a memorandum of law or supporting affidavit accompany a notice of motion, so long as they are eventually filed, and that any such requirement would be contrary to the Rule 54 Advisory Committee Notes, the suggestion of the Clerk of the Court[13], and discussions between the parties.[14]  They further argue that any delay in filing was minimal and should be excused by the Court.

---

[13]  After plaintiff filed his Notice of Motion, he was contacted by the Clerk's Office for this Court because he had not attached a memorandum of law or supporting affidavits, although they were referred to in the notice. Plaintiff stated that in his view no affidavits or memoranda of law needed to be attached, as long as they were provided in due course.  According to plaintiff, unidentified Clerk's Office personnel agreed.

[14]  I dismiss these final two arguments out of hand.  Decisions on both substantive and procedural issues are decided by the judges of this Court, not the Court's Clerk.  Moreover, whatever discussions were held between the parties, there is no indication that defendants waived their right to move for dismissal of this motion on the grounds of improper filing.

A. *Plaintiff Satisfied the Requirements of Rule 54 and the Local Rules*

The Advisory Committee Notes to Rule 54 state:

> The rule does not require that the motion be supported at the time of filing with the evidentiary material bearing on the fees. This material must of course be submitted in due course, according to such schedule as the court may direct in light of the circumstances of the case. What is required is the filing of a motion sufficient to alert the adversary and the court that there is a claim for fees, and the amount of such fees (or a fair estimate).

Fed. R. Civ. Pro. 54, Advisory Committee Note (1993).

The question "is whether the . . . notice satisfies the letter and spirit of Rule 54's procedural requirements." *Worthington v. Elmore County Bd. of Educ.*, 2006 WL 1008861, at *4 (M.D.Ala. Apr. 17, 2006). In *Worthington*, the court granted summary judgment in favor of the defendant County Board and judgment was entered. Within 14 days of entry of judgment, the County Board filed a notice of its intent to seek attorneys' fees if the ruling were upheld, as plaintiff had appealed. The decision was affirmed, and the County Board then moved for attorneys' fees, seven months after judgment was entered in the district court. The *Worthington* court determined that the notice did not satisfy the letter and spirit of Rule 54 because it did not contain a fair estimate of the amount of attorneys' fees sought by the County Board. By contrast, in this matter, though entitled a Notice of Motion, plaintiff's notice did include a "fair estimate" of the amount of fees sought and the statutes

entitling movant to the award.  Plaintiff's notice did comport

with Rule 54's requirements.  Fed. R. Civ. Pro. 54(d)(2)(B);[15]

*see also 44 Liquormart, Inc. v. State of R.I.*, 940 F. Supp. 437,

443 (D.R.I. 1996) ("plaintiffs could have complied with Rule 54

merely by filing a simple document informing the court and

defendant that they were seeking attorneys' fees pursuant to §

1988, and a 'fair estimate' of the amount of these fees").

Defendants cite Fed. R. Civ. P. 6(c)(2), which states "[a]ny

affidavit supporting a motion must be served with the motion," to

support their argument that plaintiff's motion was improperly

filed.  Defendants also cite to Local Rules 6.1(b) and 7.1.  Rule

6.1(b) states that "[o]n all civil motions . . . the notice of

motion, supporting affidavits, and memoranda of law shall be

served by the moving party on all other parties that have

appeared in the action . . . ."  Local Rule 7.1 provides "all

motions and opposition thereto shall be supported by a memorandum

of law . . ."  None of these rules facially requires a memorandum

of law to be submitted contemporaneously with a notice of motion.

Although it is generally true that an affidavit must accompany a

motion, the Advisory Committee Notes to Rule 54 make clear this

is not required for motions for attorneys' fees.[16]  Accordingly,

---

[15]  Although plaintiff did not specify the judgment for which he sought fees, there was only one judgment in this case.

[16]  I certainly do not endorse plaintiff's method of filing and doubt it would be deemed sufficient for most other types of motions beyond those made under Rule 54.  I note further that defendants suffered no prejudice as a result of plaintiff's unconventional filing method.  The parties agreed to a briefing

I will accept the motion as properly filed.

B. *Timely Filing*

Rule 54 requires that a motion for attorneys' fees be made no later than 14 days after the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). The fourteen day deadline in Rule 54 serves important purposes. First, it allows potential appellants to consider their strategy with a full understanding of the amounts at stake, as motions for fees are due approximately two weeks before the deadline for the filing of a notice of appeal. *Cardona v. City Of New York*, 2007 WL 690126, at *1 (S.D.N.Y. Mar. 7, 2007) (dismissing attorneys' fees motion as untimely where filed 12 weeks after entry of judgment). Second, "[p]rompt filing affords an opportunity for the court to resolve fee disputes shortly after trial, while the services performed are freshly in mind." *Id.* at *2 (quoting Fed. R. Civ. P. 54, Advisory Committee Notes).

Judgment in this matter was entered on October 2, 2007. However, because defendants filed a motion for reconsideration of Diaz III, plaintiff's time to file did not begin to run until November 21, 2007, when I denied reconsideration in Diaz IV. *See Weyant v. Okst*, 198 F.3d 311, 314 (2d Cir. 1999) ("[W]e conclude that a Rule 54(d)(2)(B) motion is timely if filed no later than 14 days after the resolution of such a . . . motion [for judgment

---

schedule that allowed defendants sufficient to time to respond to plaintiff's motion.

as a matter of law, motion to alter or amend judgment, or for a new trial]"). Plaintiff, however, filed his Notice of Motion on December 7, 2008, two days after the expiration of the 14-day deadline.

Under *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 227-228 (2d Cir. 2004), a district court may extend the date for filing a motion for attorney's fees, even if the request is made after the expiration of the deadline, if the late party has demonstrated "excusable neglect." *See also* Fed. R. Civ. Pro. 6(a)(1)(B) (Court may, for good cause, extend the time for filing "on motion made after the time has expired if the party failed to act because of excusable neglect").[17]

"To determine whether a party's neglect is excusable, a district court should take into account: '[1][t]he danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was in the reasonable control of the movant, and [4] whether the movant acted in good faith.'" *Id.* at 228 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*

---

[17] Plaintiff has not so moved, but does explain in his submissions in connection with this motion his delay. He further requests that the court extend his filing time. Pl.'s Rep. at 9. Given the already protracted nature of this litigation, I will treat this request as a motion under Fed. R. Civ. P. 6(b)(1)(B). *See Blisset v. Casey*, 969 F. Supp. 118, 123 n.7 (N.D.N.Y. 1997) (treating Reply Memorandum accompanying affirmation, which addressed the issue of the timeliness of the fee motion, as a "motion" requesting an extension under then Rule 6(b)(2)).

*Ltd. P'ship,* 507 U.S. 380, 395 (1993)).[18] "As these factors suggest, excusable neglect is an elastic concept that is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* "[Excusable neglect] may encompass delays caused by inadvertence, mistake, or carelessness, at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and movant's excuse has some merit." *LoSacco v. City of Middletown,* 71 F.3d 88, 93 (2d Cir. 1995) (citations and internal quotation marks omitted).

Defendant has demonstrated no prejudice due to the minimal, two-day delay, which also did not impact on the proceedings. Plaintiff has explained the delay was caused by demands in other cases and the absence of Frances Bigelow, one of plaintiff's primary attorneys, for one week during this period. Plaintiff also acted in good faith, as counsel was in contact with defendants concerning the fees incurred in litigating the February 2007 Motion during Rule 54's 14-day period in an attempt to settle the matter without further litigation. Courts faced with similarly short delays and explanations have found "excusable neglect." *See*, *e.g., Blissett v. Casey*, 969 F. Supp. 118, 123-24 (N.D.N.Y. 1997) (permitting late filing of attorneys' fees motion where motion was 10 days late, defendants made no

---

[18] These factors are generally referred to as the *Pioneer* factors, after the cited Supreme Court case.

showing of prejudice, and plaintiff's excuse, miscalculation of the filing and service date, had "some, albeit not much, merit"); *State Bank of India v. Balogh, Inc.*, 1995 WL 688927, at *1 (S.D.N.Y. Nov. 21 1995) (granting request, filed after deadline, for four week extension to move for attorneys' fees where delay in seeking extension was one business day, there was no suggestion of bad faith by plaintiff, and defendants cited no prejudice and plainly have suffered no harm from the delay); *see also Williamsburg Fair Housing Committee v. New York City Housing Authority*, 2007 WL 486610, at *3 (S.D.N.Y. Feb. 14, 2007) (permitting filing for award of attorneys' fees for monitoring implementation of settlement 38 days after monitoring ended).

Defendants cite *Horsford v. The Salvation Army*, 2002 WL 31175221 (S.D.N.Y. Oct. 1, 2002)[19] to support their argument that this Court should not retroactively extend the filing date and render plaintiff's application timely. In *Horsford*, however, the court did not address the *Pioneer* factors and the movant "provided no details" that explained the delay. *Id.* at *2. Thus, *Horsford* is distinguishable. While courts have refused to extend the filing time for a 54(d) motion when the request was made after the expiration of the time to file, in such cases the delays are generally longer than those in the instant case, the

---

[19] Defendants also cite *Weyant v. Okst*, 198 F.3d 311, 315 (2d Cir. 1999), but *Weyant* held that a Rule 54(d) motion must be filed within 14 days after the resolution of a Rule 50(b), 52(b), or 59 motion. Because the motion in *Weyant* had been filed within 14 days, the Court did not address the issue of when a late filing should be excused.

movant has provided no excuse, there is some indication of bad faith on the part of the movant, or there is prejudice to the non-prevailing party. *See*, *e.g.*, *Latin America Finance Group, Inc. v. Pareja*, 2007 WL 1009506, at *1 (S.D.N.Y. Apr. 2, 2007) (dismissing motion as untimely when made nearly three months after expiration of deadline); *Roberts v. Markey,* 2006 WL 3068675, at *2 (S.D.N.Y. Oct. 27, 2006) (two and one-half months past deadline and no reference to "excusable neglect"); *Mattel, Inc. v. Radio City Entertainment*, 210 F.R.D. 504, 505 (S.D.N.Y. 2002) (noting Mattel claimed it did not file appeal in part due to defendant's failure to file for attorneys' fees and denying motion as untimely where defendant offered no reason to excuse its neglect).

Defendants refer to, but do not discuss how, the *Pioneer* factors weigh in their favor. Defendants argue that plaintiff has been on notice since January 18, 2008 that his motion was untimely, but, as noted above, plaintiff made a request for an extension in his reply brief and the *Pioneer* factors weigh in favor of granting the request.[20] Defendants also argue that this is a second application for fees and that plaintiff was already

---

[20] The better practice may have been for plaintiff to make an application for an extension as soon as he was notified, on January 18, 2008. Excusable delay, however, concerns the period when plaintiff failed to act in filing his fees motion, not the period he failed to seek an extension. Thus, the January 18, 2008 date is not relevant to my excusable neglect inquiry.

awarded $67,353.52 for fees and costs on a judgment of $8,890.[21]
As plaintiff is legally entitled to appropriate fees on his fee
motion, *see infra*, I fail to see how this enters the analysis of
the *Pioneer* factors.  Accordingly, I grant plaintiff's motion for
an extension of filing time to the actual filing date of the
motion, December 7, 2007.[22]

    II.  <u>FEE AND DISBURSEMENTS AWARD</u>

    Having dealt with the procedural aspects, I now turn to
determining the reasonableness of plaintiff's fee request.

    A.  *Lodestar Method Used for Determining Reasonable
        Fees*

    As this court noted in Diaz III, the Second Circuit uses the
"presumptively reasonable fee," known as the "lodestar figure"
(or "lodestar") in other circuits, to determine reasonable
attorneys' fees for federal claims.  *Diaz III*, at *2.  "The
presumptively reasonable fee is arrived at by multiplying the
number of hours reasonably expended on the litigations . . . by
an hourly rate."  *Id*. at *3 (citation and internal quotation
marks omitted).  Courts also use this method when calculating
fees on fee motions.  *See*, *e.g.*, *New York State Nat. Organization*

---

[21]  I addressed the proportionality issue in Diaz III, 2007 WL 2903920, at *7-
8. Defendants' implication that a further fee award would render the fees even
more disproportionate to the damages does not alter my analysis concerning
whether to grant the extension to file the motion.  Further, for the reasons
stated therein, the increased proportion between the award of fees and costs
and damages does not counsel against a further award, if it is appropriate.

[22]  Moreover, even if I concluded that plaintiff's motion was not properly
filed until December 28, 2007, 37 days after entry of judgment, I would
similarly extend plaintiff's filing time to that date.

*for Women v. Pataki*, 2003 WL 2006608, at *4, n.5 (S.D.N.Y. Apr. 30, 2003) (utilizing lodestar method to determine fees, including fees for fee motion).

   B.   *Application of Lodestar Method*

   In determining the lodestar, I use the rates I concluded were appropriate in my Diaz III, for the reasons set forth therein. *Id*. at *5. These rates are as follows:

| | |
|---|---|
| Douglas R. Hirsch | $375 |
| David Kasell | $305 |
| Francis Bigelow | $245 |
| Michael Crespo | $120 |
| Pat Green | $120 |

According to the records submitted in plaintiff's December 28, 2007 Affirmation in Support, plaintiff's attorneys spent 146.9 hours litigating the issues concerning their fees and attempting to enforce the original judgment obtained against defendants. At these rates, plaintiff's attorneys incurred $33,639.00 in fees. They also incurred an additional $342.68 in disbursements. Plaintiff's presumptively reasonable fee, therefore, is $33,981.68.[23]

---

[23] There is some discrepancy between the amounts sought in the various notices submitted in connection with this motion. Plaintiff, however, clarified that the amount set forth in the Bigelow Affirmation, $33,981.68, is the amount sought. This amount is consistent with the time and billing records submitted by plaintiff.

i.  *Prevailing Plaintiff Is Entitled To Attorneys'*
*Fees Incurred While Litigating Attorneys' Fees And*
*Seeking To Enforce Judgment*

Defendants argue that once final judgment is entered, the action is complete, and any award of attorneys' fees on the fee motion or the steps taken to enforce the judgment would be improper because plaintiff is entitled to fees only on an "action."  *See* N.Y. Veh. & Traf. Law § 417-a; 15 U.S.C. § 1640(e) ("[a]ny action under this section may be brought in any United States District Court, or any other court of competent jurisdiction. . ."); N.Y. Gen. Bus. Law § 349 ("any person who has been injured by reason of any violation of this section may bring an action . . . the court may award reasonable attorneys fees . . .").  Based on this argument, I held in Diaz III that I would not award plaintiff fees incurred prior to the date this action was commenced based on plaintiff's argument that pre-filing fees were not part of an "action" as the term is defined. *Diaz III*, at *8; *see also Peterson v. Continental Casualty Co.*, 282 F.3d 112, 119-20 (2d Cir. 2002) (declining to award attorneys' fees and costs on pre-filing activities).[24]  The present issue is quite different, however, and awards for fees litigating fees, even if post-judgment, are clearly permitted under Second Circuit case law.

First, a prevailing plaintiff is clearly entitled to

---

[24] Defendants' citation to *Peterson* is inapposite on the facts of this case.

attorneys' fees incurred in litigating motions for attorneys'
fees. *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979) ("time
reasonably spent by plaintiff's attorneys in establishing their
fee would be compensable.  The exercise of discretion, however,
gives the district judge great leeway.  If the fee claims are
exorbitant or the time devoted to presenting them is
unnecessarily high, the judge may refuse further compensation or
grant it sparingly"), *aff'd on other grounds*, 448 U.S. 122
(1980); *de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232,
236 (1st Cir. 1990) (in case under TILA, among other federal
consumer protection statutes, ordering district court, upon
remand, to included in its fee award reasonable attorneys' fee
for services rendered in connection with appeal of district
court's denial of attorneys' fees); *Glass v. Pfeffer*, 849 F.2d
1261, 1266 n. 3 (10th Cir. 1988) ("It is obviously fair to grant
a fee for time spent litigating the fee issue, at least if the
fee petitioner is successful and his claim as to a reasonable fee
is vindicated, since it is the adversary who made the additional
work necessary").

As the *Gagne* court noted:

> If an attorney is required to expend time litigating
> his fee claim, yet may not be compensated for that
> time, the attorney's effective rate for all the hours
> expended on the case will be correspondingly decreased.
> . . . Such a result would not comport with the purpose
> behind most statutory fee authorizations, Viz [sic],
> the encouragement of attorneys to represent indigent

clients and to act as private attorneys general[25] in
vindicating congressional policies.

*Id.* (quoting *Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d
Cir. 1978)). Indeed, the Second Circuit has consistently held
fee awards for litigating an initial fee application should be
granted in cases involving fee-shifting statutes. *Weyant v.
Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (42 U.S.C. §§ 1983 and
1988); *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94 (2d Cir.
1997) (awarding fees to prevailing plaintiff for successful
prosecution of appeal from order denying requested attorneys'
fees following successful § 1983 action); *see also Donovan v.
CSEA Local Union 1000, Am. Fed. of State, Cty. & Mun. Employees
AFL-CIO*, 784 F.2d 98, 106 (2d Cir. 1986) (29 U.S.C. §§ 481-483).

The New York Court of Appeals has also noted that if time
spent litigating fees was not compensable under fee-shifting
provisions, the purpose of such statutes would be frustrated.
*See Fresh Meadows Med. Assoc. v. Liberty Mut. Ins. Co.*, 49 N.Y.2d
93, 99 (1979) (in claim for first-party benefits under New York's
former no-fault insurance law, arbitrator had authority to
include services rendered by attorney in substantiating the claim

---

[25] In Diaz III, at 7 (quoting *Nigh v. Koons Buick Pontiac GMC, Inc.*, 384 F.
Supp.2d 915, 919 (E.D.Va. 2005) (quoting *de Jesus v. Banco Popular de Puerto
Rico*, 918 F.2d 232, 233 (1st Cir. 1990)), *aff'd in part and vacated in part*,
458 F.3d 183 (4th Cir. 2007), I noted that the purpose of 15 U.S.C. § 1640(3)
is to create a system of "private attorneys general" to assist in enforcing
TILA.

for counsel fees in award of attorney's fees);[26] *see also Kumble
v. Windsor Plaza Co.,* 161 A.D.2d 259, 261 (1st Dep't 1990)
(awarding fees on fees under N.Y. Real Prop. Law § 234).

Moreover, it is well-settled that a plaintiff may recover
fees in connection with enforcement of a judgment. *See Joel v.
Village of Kiryas Joel*, 1997 WL 543091, at *2 (S.D.N.Y. Sept. 4,
1997) (allowing attorneys' fees for contempt motion to enforce
settlement agreement) (citing *Balack v. Curtin*, 655 F.2d 798,
802-03 (7th Cir. 1981) (reversing district court's denial of fees
sought by plaintiff for her efforts to collect the judgment
awarded her in her successful action under civil rights laws)).[27]

ii. *Defendants' Additional Objections*

Defendants next argue that they should not be obligated to
pay the fees for the time plaintiff's attorneys spent researching
and briefing the impact of *Arbor Hill Concerned Citizens
Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir.

---

[26] Although *Fresh Meadows* has been overruled by regulatory authority in the
no-fault insurance context of that case, *see Hempstead General Hospital v.
Allstate General Insurance Company*, 106 A.D.2d 429, 482 N.Y.S.2d 523, *aff'd.*
64 N.Y.2d 958, its rationale in other contexts remains undiminished.

[27] Plaintiff's efforts to enforce the judgment were also reasonable.
Although defendants had filed a motion for reconsideration of Diaz III on
October 12, 2007, defendants did not seek a stay of the judgment until
November 16, 2007. Pursuant to Fed. R. Civ. Pro 62(a), execution on judgment
is stayed only 10 days automatically and a party seeking reconsideration must
move for a stay while that motion is pending. Fed. R. Civ. P. 62(b).
Accordingly, plaintiff's attempts to execute judgment beginning on October 12,
2007, were proper.

2007),[28] as such work was undertaken pursuant to this Court's order of April 30, 2007. Defendants cite no authority for the proposition that they should not be required to pay fees for briefing that the Court reasonably required to address the impact of applicable, intervening case law.

Defendants also argue that plaintiff spent an inordinate amount of time briefing the *Arbor Hill* issue. I agree that the 22.4 hours and $5,973.00[29] is unreasonable. Much of plaintiff's *Arbor Hill* submission simply cited his attorneys' firm's experience in consumer protection and the lack of attorneys practicing consumer law in New York City. While these considerations were relevant to my determination of whether or not to award Southern District fees, such issues had already been presented in plaintiff's February 2007 Motion. Though I do not discredit that plaintiff's attorneys spent the billed time on this submission, it should not have been such an arduous process to include and expand upon the themes from their original motion in the context of *Arbor Hill*. I decline to reduce these hours specifically, however, because, for the reasons stated below, I

---

[28] The Second Circuit amended and superseded its opinion in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, --- F.3d ---, 2008 WL 961313 (2d Cir. Apr. 10, 2008). The amended opinion, however, continues to hold that a court may use out-of-district hourly rates in calculating the presumptively reasonable/lodestar amount if it is clear that a reasonable, paying client would have paid the higher rate. Thus, my analysis in Diaz III is not affected.

[29] Plaintiff alleges he incurred $6,118.50 in fees on this motion. Pl. Mem. at 4. The time records indicate the sum this court has arrived at. In any event, $6,118.50 is a similarly large sum.

reduce plaintiff's request by approximately 32%, and such reduction will compensate for this specific instance of excessive fees.

Defendants make no other objections to the requested fees and the Court does not find that any of the requested fees are non-compensable.

iii. *Additional Reductions*

Plaintiff's attorneys spent 146.9 hours litigating the issues of their fees and attempting to enforce judgment, somewhat more than half the time they spent litigating the underlying matter (270.3 hours). Plaintiff's attorneys accordingly spent 35% of the total time claimed for the entire action litigating their fees. I conclude that "the fee claims are exorbitant [and] the time devoted to presenting them is unnecessarily high . . ." *Gagne*, 594 F.2d at 344.

The amount of time spent on gaining their fees is excessive. Much of the papers submitted by plaintiff rehashed prior submissions. For example, plaintiff's initial memorandum of law in support of his second motion for attorneys' fees, which, because it was submitted subsequent to his notice of motion raised questions of procedural propriety and timeliness, argues only one new point not covered in his other submissions. The first section of the memorandum argues that the Second Circuit does allow fees for time making and litigating fee applications. The second section, which urges this Court to apply the lodestar

method to determine plaintiff's fees, cites no cases not cited in
plaintiff's February 2007 Motion and reprises, nearly word for
word, the arguments concerning the lack of available attorneys
and the experience of plaintiff's attorneys. *See* Pl. Mem. 5
(Feb. 9, 2007) 7-12; Pl. Mem. (Dec. 28, 2007) 9-15.
Additionally, as discussed above, portions of plaintiff's
briefing concerning the effect of *Arbor Hill* again discussed
these same issues in much the same terms.

Courts have usually limited fee application awards to an
amount substantially less than the fees awarded on the main
claim. *See, e.g, Baird v. Boies, Schiller & Flexner LLP*, 219 F.
Supp.2d 510, 525 (S.D.N.Y. 2002) (where plaintiff's attorneys
spent 215 hours on making and defending fee application and only
410 on entire litigation, court reduced plaintiffs' attorneys'
request of $66,675.75 in supplemental fees for the application to
ten percent of the amount of fees awarded for the underlying
litigation, or $4,974.90); *Colbert v. Furumoto Realty, Inc.*, 144
F. Supp.2d 251, 261-62 (S.D.N.Y. 2001) (recognizing that courts
in Second Circuit have granted fee application awards in the
range of 8 to 24% of the total time claimed in the entire case);
*see also Reiter v. Metropolitan Transp. Authority of State of New
York*, 2007 WL 2775144 (S.D.N.Y. Sept. 25, 2007) (discounting
hours deemed unreasonable on application, motions, and appeals
relating to attorneys' fees); *R.E. v. New York City Bd. of Educ.,
Dist. 2*, 2003 WL 42017 (S.D.N.Y. Jan. 6, 2003) (reducing

requested fees for fee application and litigation from $24,522.10
to $12,000).

I recognize that much of the expense incurred by plaintiff's
attorneys resulted from defendants' opposition to the plaintiff's
initial fees application.  I also recognize that some of the
issues presented, notably the questions of the effect of *Arbor
Hill* and of whether a fee award had to be proportional to the
damages award, were complex or novel.  Moreover, plaintiff was
forced to respond to a motion for reconsideration.  Therefore an
award at the high end of the range recognized by the Second
Circuit is appropriate.  Twenty-four percent of 417.2 is
approximately 100 hours.  As plaintiff requested $33,639 for
146.9 hours, $22,900 is appropriate compensation for plaintiff's
litigation of his fees and enforcement of judgment in this
case.[30]

    iv.  *Disbursements*

There being no objection to the disbursements claimed by
plaintiff, and their appearing reasonable, I grant plaintiff his
full request for disbursements in the amount of $342.68.

### Conclusion

For the reasons set forth above, the plaintiff is entitled
to attorneys fees and disbursements in the total amount of

---

[30]  This figure recognizes some additional time spent by plaintiff on his
reply papers and oral argument, which was not accounted for in plaintiff's
submissions nor the subject of any reasonable estimate.  Accordingly, the
Court will not entertain an application for further fees.

$23,242.68, jointly and severally against both defendants.  The

Clerk is directed to enter judgment in favor of plaintiff in the

amount of $23,242.68.  The Clerk is directed to transmit a copy

of the within to all parties and to Magistrate Judge Levy.

SO ORDERED.

Dated :   Brooklyn, New York
          May 6, 2008


          By:  /s/ Charles P. Sifton (electronically signed)
                 United States District Judge